[No. 21345. *En Banc.* April 23, 1929.]

GEORGE RAPE, *Respondent,* v. ROBERT F. LENZ, *Appellant.*[1]

*John F. Aiken,* for appellant.

*James P. Dillard* (*Fred B. Morrill,* of counsel), for respondent.

[1]Reported in 276 Pac. 868.

Main, J.—This is an appeal by Robert F. Lenz from a judgment of the superior court sustaining a writ of garnishment. No bill of exceptions or statement of facts has been brought to this court. The only question, therefore, is whether the findings support the judgment.

The facts found by the trial court may be summarized as follows: August 2, 1921, Bertha Lenz brought an action for divorce against her husband Robert F. Lenz. At this time, the parties had two minor children, Theda Lenz and George Lenz. September 1, 1921, an interlocutory decree of divorce was entered, and on March 8, 1922, a final decree, in both of which Mrs. Lenz was awarded the custody and control of the children. For their support, maintenance and education, Mr. Lenz was ordered to pay the sum of $50 per month until the children should attain the age of majority or until the further order of the court. Neither of the children have attained the age of majority, and neither the interlocutory order of divorce nor the final decree have, in any manner, been changed or modified. After the entry of the final decree, George Rape and Mr. Lenz entered into an agreement as follows:

"Between George Rape and Robert F. Lenz it is agreed:—Said Rape agrees to board, room, clothe and care for Theda and George Lenz, minors, adopted by said Rape and wife, for the sum of fifty dollars per month until the majority of said minors, and said Lenz agrees to pay said Rape for said time, the sum of $50 per month for said support, and the education of said minors, beginning December 12, 1921.

"Signed—George Rape
"Robert F. Lenz."

In connection therewith, and in consideration therefor, Mrs. Lenz agreed in writing, as follows:

"I agree to the above and waive the alimony and support provisions for said children in the decree in *Lenz v. Lenz* in consideration of Robert Lenz signing the above agreement.        Signed—Bertha Lenz."

By virtue of this agreement, Mr. and Mrs. Rape adopted the two minor children of Mr. and Mrs. Lenz. Subsequent to July, 1926, Mr. Lenz refused to pay the $50 per month, and an action was instituted, and judgment was obtained against him thereon in the sum of $500. This judgment has not been satisfied, and no part thereof has been paid. Subsequent to the entry of the judgment, Mr. Lenz filed a petition in bankruptcy in the Federal court, for the express and only purpose of attempting to relieve himself of the obligation of providing for the care, maintenance and support of the minor children of himself and Mrs. Lenz. Mr. Lenz was adjudged a bankrupt, and scheduled, as liabilities, the $500 judgment above mentioned and the contract set out relative to the support of the minor children. After the discharge in bankruptcy, George Rape, the respondent, caused a writ of garnishment to be issued and served upon the Northern Pacific Railway Company, which company answered, showing money in its possession belonging to Mr. Lenz. It was further found, more as a conclusion than as a finding of fact, that the agreements above set out

". . . entirely relate to and are connected with the alimony of $50 per month to be paid by defendant Robert F. Lenz to Bertha Lenz."

The question is, whether Mr. Lenz was relieved from the obligation to support his children by reason of his discharge in bankruptcy. The bankruptcy act of 1898, U. S. Stat. at Large, vol. 30, ch. 541, § 17, contained no provision that a discharge in bankruptcy should not release the bankrupt from his obligation to pay alimony or maintenance and sup-

port for his children. Under that act, it was held that alimony was not a liability which could be scheduled in the bankruptcy proceeding and from which the decree therein would discharge the bankrupt from liability, this on the ground that such an obligation was not founded upon contract, but on a natural and legal duty. *Audubon v. Shufeldt*, 181 U. S. 575. In 1903 U. S. Stat. at Large, vol. 32, part 1, ch. 487, § 5, the prior act was amended, and it was there provided that a discharge in bankruptcy should not release the bankrupt

". . . for alimony due or to become due, or for maintenance or support of wife or child."

Here is an express provision that a discharge in bankruptcy does not release the bankrupt from his obligation to support his minor children. Were it not for the contract above set out, made between Mr. Rape and Mr. Lenz, which was approved by Mrs. Lenz, and the adoption of the children by Mr. and Mrs. Rape, the act of Congress, by its express provision, would apply and control.

The question then arises, whether Mr. Lenz had a right to schedule his obligation under the above contract as a liability in the bankruptcy proceeding and be discharged therefrom. From the facts stated, it appears that the consideration for the contract was, first, on the part of Mr. and Mrs. Rape, that they would adopt the children and, second, on the part of Mrs. Lenz, that she would waive the provisions of the divorce decree with reference to the maintenance and support of the children as a consideration for the contract. It thus appears that the obligation to pay for the maintenance and support of the children, as provided in the contract, is immediately and directly connected, not only with the adoption, but with the decree in the divorce action providing for $50 a month for

their support and maintenance. Under these circumstances, it seems to us that the debt created by the contract is not one which could be discharged in the bankruptcy proceeding. For the purpose of protecting a divorced wife in her right to alimony, and children in their right to maintenance and support, a liberal view of the bankruptcy act has been taken by the Federal supreme court.

In *Dunbar v. Dunbar*, 190 U. S. 340, the husband, after obtaining a divorce from his wife, she not opposing the decree, executed and delivered a written contract by which he agreed to pay her a specified sum, annually, for her support during her life or so long as she remained unmarried. Subsequently the husband was adjudged a bankrupt and discharged. The wife sued for the amounts accrued upon the contract prior to the discharge. The court made these observations:

"Had the provisions of this contract, so far as contracting to pay money for the support of his wife is concerned, been embodied in the decree of divorce which the husband obtained from his wife in Ohio on the ground of desertion, the liability of the husband to pay the amount as alimony, notwithstanding his discharge in bankruptcy, cannot be doubted. *Audubon v. Shufeldt*, 181 U. S. 575. We are not by any means clear that the same principle ought not to govern a contract of this nature when, although the judgment of divorce is silent upon the subject, it is plain that the contract was made with reference to the obligations of the husband to aid in the support of his wife, notwithstanding the decree. The facts appearing in this record do not show a case of any moral delinquency on the part of the wife, and the contract, considering the circumstances, might possibly be held to take the place of an order or judgment of the court for the payment of the amount, as in the nature of a decree for alimony. We do not find it necessary, however, to decide that question in this case, because in any event

we think the contract as to the support of the wife is not of such a nature as to be discharged by a discharge in bankruptcy."

Notwithstanding the fact that that case was decided upon another point, we think we are justified in quoting the views of that court which are applicable to the question now before us.

What the effect of the adoption of the minor children by Mr. and Mrs. Rape would have been upon the obligation of Mr. Lenz as provided in the divorce decree for their support and maintenance, had it not been for the contract above mentioned, it is not necessary here to determine, and we express no opinion thereon.

The judgment will be affirmed.

Mitchell, C. J., Beals, Fullerton, French, and Millard, JJ., concur.

Holcomb, J. (concurring)—I concur in the result reached by the majority. There are, however, additional, cogent reasons for my concurrence.

The contract merely substitutes one payee for another, for the same liability. Alimony liability could not be discharged by bankruptcy proceedings. The contract is still one for the support of minor children which cannot be discharged by such proceedings. Neither can the adoption statute be used as a protection from fraud as is attempted by appellant. Federal courts would not permit it, and state courts should not.

Parker, J. (dissenting)—The conclusion reached by my brethren in the foregoing opinion seems to me so plainly erroneous that I venture to express my dissent therefrom. It seems to me that the obligation upon which the $500 judgment was rendered in favor of Rape and against Lenz, was purely contractual, and

hence was discharged by the bankruptcy proceedings. In view of our adoption statute, fixing, upon adoption, a new status of minors as to their parentage in law, I cannot see how, after the adoption proceedings here in question, there remained any legal parental supporting obligation resting upon Lenz in favor of the adopted minors, though they were his natural children, or in favor of their newly adopted parents. The legal effect of adoption under our statutes is stated in Rem. Comp. Stat., § 1699, in this plain, unequivocal language:

"By such order the natural parents shall be divested of all legal rights and obligations in respect to such child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock: . . ."

This court has repeatedly given full force and effect to this plain language. *Van Brocklin v. Wood*, 38 Wash. 384, 80 Pac. 530; *In re Masterson's Estate*, 45 Wash. 48, 87 Pac. 1047, 122 Am. St. 886; *In re Lease*, 99 Wash. 413, 169 Pac. 816; *In re Masterson's Estate*, 108 Wash. 307, 183 Pac. 93; *In re McCorkle's Estate*, 128 Wash. 556, 223 Pac. 1038; *In re Waddell's Estate*, 131 Wash. 566, 230 Pac. 822; *In re Hebb's Estate*, 134 Wash. 424, 235 Pac. 974. It is not suggested here that the adoption of these minors was consummated other than in strict compliance with the procedure prescribed by our adoption statutes. Rem. Comp. Stat., §§ 1696-1699.

It is, of course, easy to see how Lenz could, and did, by contract, obligate himself so as to enable Rape to

obtain the $500 judgment against him, but that, to my mind, is far from Lenz' remaining obligated, as a parent is obligated, to support his children. By the adoption, the statute says:

"The natural parents shall be divested of all legal rights and obligations in respect to such child."

When Rape voluntarily entered into the support contract with Lenz, he thereby voluntarily assumed the same risk of Lenz' remaining insolvent that every simple contract creditor assumes when he voluntarily contracts with his debtor without security.

It is said in the foregoing opinion that,

"Lenz filed a petition in bankruptcy in the Federal court for the express and only purpose of attempting to relieve himself of the obligation of providing for the minor children."

I am unable to see of what legal moment that is in our present inquiry. First, there is nothing before us in this case presenting any problem of whether or not Lenz remains liable under his contract with Rape for future installments which may fall due under that contract. Second, if Lenz was, in fact, insolvent at the time of applying for and receiving his discharge in his bankruptcy proceeding, as we must presume was the fact, he was but then exercising an absolute legal right, and was prompted by exactly the same motive that prompts every insolvent who seeks relief through bankruptcy, that is, to relieve himself by surrendering his worldly possessions for the benefit of his creditors and obtaining a discharge as the Federal bankruptcy statute gives him the right to do, whether his debts be one or many.

I am of the opinion that the obligation for which the $500 judgment was rendered in favor of Rape and against Lenz was a pure contractual obligation, dischargable, and that was discharged, in the bankruptcy

proceedings; and that therefore the judgment here on appeal should be reversed.

TOLMAN, J. (dissenting)—The broad and all-inclusive language of our adoption statute compels me to concur with Judge Parker.