[No. 29517. Department One. April 10, 1945.]

NANCY ST. GERMAIN, *Appellant,* v. VERNER ST. GERMAIN, *Respondent.*[1]

*W. H. Sibbald,* for appellant.

*E. D. Germain,* for respondent.

JEFFERS, J.—In November, 1930, Nancy St. Germain, appellant, began an action for divorce in Cowlitz county

[1] Reported in 157 P. (2d) 981.

against her husband, Verner St. Germain, respondent herein. At the time of the filing of the complaint, the St. Germains had two children, LaVern, a girl, age four years, and Clyde, age two years. The cause came on for hearing before the court on November 12, 1930, and, on November 18, 1930, the court entered an interlocutory order granting plaintiff a divorce, awarding her the care and custody of the two minor children with right of visitation to defendant, and ordering defendant to pay fifty dollars a month during each and every month for the care and support of the minor children.

On May 18, 1931, the court entered a final decree, wherein plaintiff was awarded the care and custody of the minor children and defendant was ordered to pay to plaintiff for the support of the minors the *sum of fifty dollars a month* on the *first day of each and every month* thereafter until further order of the court.

Sometime after the entry of the final decree of divorce, appellant married J. R. Edwards. In October, 1934, J. R. Edwards and wife petitioned the superior court for Cowlitz county to adopt LaVern and Clyde St. Germain and to change the name of the minors to Edwards. The petition came on for hearing before the court, and, on October 26, 1934, an order of adoption was made and entered, which, in part, states:

". . . and it appearing satisfactorily to the court that said children were born in Cowlitz county, Washington, and ever since have been and now are residents of said county, and that the father of said children, said Verner Herman St. Germaine, has consented to the adoption of said children by said J. R. Edwards, by a duly executed consent filed in this court:

"AND IT FURTHER APPEARING THAT said J. R. Edwards and Nancy Edwards, as such husband and wife, have sufficient means and ability to care for, nurture and educate said minors and desire so to do, they being examined separate and apart,

"Now, THEREFORE, IT IS ADJUDGED and DECREED that the said minor children, Luverne [LaVern] St. Germaine and Clyde St. Germaine, shall bear the name of said J. R. Edwards, and be known as Luverne [LaVern] Edwards and

Clyde Edwards, and shall be, to all intents and purposes, the children of said Petitioners, J. R. Edwards and Nancy Edwards."

On April 12, 1944, respondent herein, Verner St. Germain, filed in the case of St. Germain v. St. Germain, above referred to, what is termed a "Bill in Equity," wherein he referred to the interlocutory order of November 18, 1930, a true copy of which was attached to and made a part of the bill.

The bill alleged that Nancy St. Germain and J. R. Edwards had married and thereafter they petitioned for the adoption of the St. Germain children; that, as an inducement to Verner St. Germain to give his consent to such adoption, Mr. Sibbald, attorney for plaintiff in the divorce action and attorney for the petitioners in the adoption proceedings, wrote defendant a letter, wherein it was noted, in substance, that, if defendant would consent to the adoption, by such adoption all of his responsibilities for the support of the children would cease and he would be forever relieved from all further responsibility for their support or maintenance both as to past-due and future payments. It further alleged that, relying on the statements contained in the letter, respondent consented to the adoption, and the order hereinbefore referred to was entered on October 26, 1934.

The bill also alleged that, at all times since the order of adoption, the Edwards had kept the children in their household and had treated them as their own; that they never made any demand upon respondent for the support and maintenance of the children, or either of them, and had ignored the provisions of the interlocutory order for nearly ten years.

It further alleged that, on or about April 1, 1944, appellant caused to be issued in the divorce proceedings a general execution based upon the interlocutory order, claiming a balance due, unpaid, and owing of seven thousand eight hundred dollars, and caused the sheriff of Clark county to levy upon, seize, and take into possession and advertise for sale, the 1939 Pontiac sedan of respondent, and stated that the automobile would be sold at sheriff's sale on April 15, 1944,

unless restrained by the court; that appellant also caused to be issued and served on Kaiser Company, Inc., of Vancouver, Washington, a writ of garnishment, seizing the wages of this respondent, and that the wages were being held under the garnishment and would be wrongfully applied to the satisfaction of the money claimed to be due under the interlocutory order unless restrained by the court.

It further alleged that no sums payable under the interlocutory order had become due or payable since the date of the adoption of the St. Germain minor children (October 26, 1934), and, if any sums were due and unpaid prior to the date of such adoption, the same were barred by the statute of limitations.

Appellant answered the bill in equity, admitting her marriage to Mr. Edwards, her divorce from respondent, the order for support money, the adoption of the St. Germain children by Edwards with respondent's consent, and denied the other allegations of the bill; and particularly denied that there had been any release of respondent from the payments to be made under the decree of divorce.

On July 12, 1944, the matter came on for hearing before the court. At the hearing only two witnesses were sworn, to wit, respondent and Mr. Sibbald. Mr. St. Germain's testimony generally supported the allegations of his bill in equity. The files in the St. Germain divorce proceedings and in the Edwards' adoption proceedings were admitted, with the exception of the papers touching the writ of certiorari.

Mr. Sibbald testified that he was the attorney for appellant in the divorce proceedings and attorney for the Edwards in the adoption matter. He further testified to the interlocutory order in the divorce proceedings and the final decree entered May 18, 1931, and that between 1931 and 1944 no action was taken to collect the money now claimed to be due for the support of the St. Germain children under and by virtue of the divorce decree. He denied that he had ever made any promises to respondent to induce him to sign a consent to the adoption of these children.

On July 13, 1944, the court signed a judgment, which was entered on July 20, 1944, the material parts of which are as follows:

"It is therefore ORDERED, ADJUDGED and DECREED:

"1. That all money and sums accruing and becoming due to Nancy St. Germain from Verner St. Germain subsequent to the 26th day of October, 1934, under the award of $50 per month made to Nancy St. Germain and ordered paid by Verner St. Germain for the support of LaVerne and Clyde St. Germain, the children of said parties, under the Interlocutory Decree dated November 19, 1930, and confirmed by the Final Decree dated May 18, 1931, made in the case of Nancy St. Germain, plaintiff, vs. Verner St. Germain, Defendant, in cause No. 9131, in the Superior Court of Cowlitz County, said state, be and the same are hereby cancelled, discharged, vacated and here adjudged extinguished.

"2. That all sums due said Nancy St. Germain from said Verner St. Germain under said Interlocutory Decree and said Final Decree in said cause No. 9131, said Superior Court, prior to the 26th day of October, 1934, are hereby adjudged barred by the Statute of limitations, . . ."

The judgment also quashed the writ of garnishment issued April 12, 1944, directed to Kaiser Company, Inc., and the general execution issued April 3, 1944, directed to the sheriff of Clark county. Mr. St. Germain was awarded costs. Nancy St. Germain Edwards has appealed from the judgment.

The assignments of error are: in deciding that the decree of adoption did, without any agreement to that effect, cancel any and all obligations on the part of respondent to pay support money under the decree; in deciding that collection of the money due under the decree prior to the order of adoption was barred by the statute of limitations; and in the awarding of costs to respondent.

These questions are presented for our consideration:

(1) Did the order of adoption, made and entered October 26, 1934, relieve and release respondent from the payment of any and all sums that might otherwise have been due subsequent to October 26, 1934, and which he would have been required to pay for the support and maintenance of his

minor children under the interlocutory order and final decree of divorce hereinbefore referred to?

(2) Has the statute of limitations run against all payments that may have accrued and have not been paid prior to October 26, 1934, under the interlocutory order and final decree?

(3) Did the trial court err in awarding costs to respondent?

On the first question presented, it is the theory of appellant, as we understand it, that, while respondent, after the order of adoption, cannot be held responsible for the personal conduct of the minors, or any torts committed by them, or their failure to attend school, and so forth, nevertheless respondent is liable under the interlocutory order and final decree to pay the sums therein ordered to be paid for the support and maintenance of the adopted children. Appellant seems to be of the opinion, from statements made in some of our decisions, that this court has held, or intimated, that adoption proceedings do not relieve the natural parent from all his duties and obligations to his child or children after a legal adoption.

In answer to the first question presented, after a consideration of our statutes, the authorities presented by counsel, and other authorities, we are of the opinion that, regardless of whether or not any agreement was made and entered into between the appellant and her husband, Edwards, and the respondent to the effect that, if respondent would give his consent to the adoption of his children, he would be released from any obligation to pay any sums due, or to become due, under the interlocutory order or final decree of divorce, this respondent was relieved and released by the adoption order from the payment of any and all sums which might become due for the support and maintenance of the adopted children subsequent to the date of the entry of the order of adoption, to wit, after October 26, 1934. Rem. Rev. Stat., § 1699 [P. C. § 9816], provides:

"By such order [of adoption] the natural parents shall be divested of all *legal rights and obligations* in respect to such child, and the child shall be free from all legal obligations of

obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock: . . ." (Italics ours.)

The above-quoted statute seems to state so plainly that the duties and obligations of a natural parent to support and maintain his children are, by legal adoption proceedings, transferred to, and become the obligation of, the adoptive parents as not to be open to argument.

In the absence of a specific agreement made by the natural parent to the effect that he will continue to contribute to the support and maintenance of his children after they are adopted, his obligation to contribute ceases at the time the order of adoption is entered. We stated in *In re Lease,* 99 Wash. 413, 169 Pac. 816, p. 416:

"When lawfully rendered, such a decree is manifestly a final adjudication of the status of the minor as to his or her future parentage, in the eyes of the law. The legal parentage of the minor is fixed and determined by such a decree. The parental rights of the natural parents are thereby extinguished and new parental rights substituted therefor."

See, also, *In re Masterson's Estate,* 45 Wash. 48, 87 Pac. 1047, 122 Am. St. 886; *In re Hebb's Estate,* 134 Wash. 424, 235 Pac. 974.

While we have consistently held to the rules announced in the foregoing cases relative to the rights, duties, and obligations of the natural and adoptive parents and of the adopted children after legal adoption, we have departed from what might be contended was the full import of the above rules in holding that an adopted child may, after such adoption, inherit from the natural parents. Thus, in *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325, 80 A. L. R. 1398, after referring to and quoting from *In re Masterson's Estate,* 108 Wash. 307, 183 Pac. 93, and *In re Hebb's Estate,* 134 Wash. 424, 235 Pac. 974, we stated, p. 381:

"Unless prohibited by statute, an adopted child may inherit both from its adoptive parent and from its natural parent. . . .

"Our adoption statute grants to the adopted child the right to inherit from its adoptive parent, *but does not divest that child of the right of inheritance from its natural parents.* . . . It cannot be assumed, presumed or inferred that the appellant cannot inherit from her father, in the absence of a legislative declaration to that effect." (Italics ours.)

Our decision relative to the right of an adopted child to inherit from his or her natural parents is based upon the failure of our statutes specifically to deprive an adopted child of that right. This holding is supported by substantial, if not the weight of, authority. However, the reason for the rule relative to the right of an adopted child to inherit from its natural parents does not apply to the contention of appellant that the natural parents are under any obligation to support and maintain, or assist in supporting and maintaining, their child or children after a legal adoption in the absence of a specific agreement so to do; for, by Rem. Rev. Stat., § 1699, the natural parents are expressly relieved from such obligation and it is assumed by the adopter or adopters.

Respondent, the natural parent of these minors, was ordered to pay a specific amount for their support and maintenance each month by the interlocutory order and final decree of divorce. This was an obligation imposed by virtue of his status as the natural parent. When the order of adoption was entered, this status came to an end and was terminated in so far as respondent's obligation to support and maintain these children was concerned, and such obligation was imposed upon the adopters; and, it seems to us, it must follow that, from the time of the order of adoption, no further duty or obligation was imposed on respondent to pay any sum or sums, for the support and maintenance of these children, imposed by the divorce decree.

In support of her contention, appellant cites *In re Egley's Estate,* 16 Wn. (2d) 681, 134 P. (2d) 943; *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325, hereinbefore referred to; and *Hale v. Department of Labor & Industries,* 20 Wn. (2d) 14, 145 P. (2d) 285, and *Rape v. Lenz,* 151 Wash. 675, 276 Pac. 868.

The *Egley* case involved the right of an adopted child to

inherit from her first adoptive parent after having been adopted a second time. After quoting from Rem. Rev. Stat., § 1699, we there stated that this statute had been construed by this court in the following cases: *Van Brocklin v. Wood,* 38 Wash. 384, 80 Pac. 530; *In re Masterson's Estate,* 45 Wash. 48, 87 Pac. 1047, 122 Am. St. 886; *In re Masterson's Estate,* 108 Wash. 307, 183 Pac. 93; *In re McCorkle's Estate,* 128 Wash. 556, 223 Pac. 1038; *In re Waddell's Estate,* 131 Wash. 566, 230 Pac. 822; *In re Hebb's Estate,* 134 Wash. 424, 235 Pac. 974; *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325, 80 A. L. R. 1398.

The cited cases all hold generally that the status of an adopted child, as regards its relation to the adoptive parents, is the same as though such child had been born in lawful wedlock. Based upon this theory and upon our decision that an adopted child may inherit from its natural parents, we held that the rights of an adopted child are fixed at the time of the adoption, and, having the same rights as a child born in lawful wedlock, such child may inherit from its first adoptive parents after a second adoption.

While the writer of this opinion was not in accord with the majority opinion in the cited *Egley* case, nevertheless it is now the law of this state. However, there is nothing in the cited case contrary to the conclusion hereinbefore reached by us in this opinion.

We have hereinbefore referred to and discussed the case of *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325.

We held in *Hale v. Department of Labor & Industries, supra,* that, under the specific provisions of the workmen's compensation act, the right of a minor child, both of whose parents were dead, to receive compensation as the child of a deceased workman, is not terminated by the child's adoption. The opinion states, p. 16:

"Having been awarded compensation the minor child is entitled to receive it throughout the period fixed by the statute if she so long survive, and it can only be sooner terminated upon the happening of an event for which termination is provided by the statute. . . .

"To hold that the child's right to compensation ceased at the time of her adoption would be to write into the statute

a provision that the legislature did not make and a provision which neither the department nor this court has the right to make."

It is true that, in the cited *Hale* case, p. 17, the following statement, which was quoted in appellant's brief, was made:

"We are committed to the rule that by adoption there is no dissolution of the natural relationship of kindred and that an adopted child will not be deprived of the benefits arising from such natural relationships. See *In re Roderick's Estate*, 158 Wash. 377, 291 Pac. 325, 80 A. L. R. 1398, and *In re Egley's Estate*, 16 Wn. (2d) 681, 134 P. (2d) 943."

The statement last above quoted, standing alone, might tend to give some support to appellant's contention, but it must be considered in connection with the question under discussion in the *Hale* case and in the two cases cited; and, when so considered, it lends no support to appellant's contention herein.

The last case cited by appellant is *Rape v. Lenz,* 151 Wash. 675, 276 Pac. 868. Appellant states that the facts in the cited case are almost identical with those in the instant case. It may be admitted that there is quite a similarity between the facts in the cited case and those in the instant case, with one marked exception.

In the cited case, after the divorce decree in which Mr. Lenz had been ordered to pay the sum of fifty dollars a month until his two children should attain the age of majority or until the further order of the court and before the adoption of the Lenz children by Mr. and Mrs. Rape, Mr. Lenz and Mr. Rape entered into the following agreement:

" 'Between George Rape and Robert F. Lenz it is agreed: —Said Rape agrees to board, room, clothe and care for Theda and George Lenz, minors, adopted by said Rape and wife, for the sum of fifty dollars per month until the majority of said minors, and said Lenz agrees to pay said Rape for said time, the sum of $50 per month for said support, and the education of said minors, beginning December 12, 1921.                    Signed—George Rape
                    "Robert F. Lenz.' "

The opinion then states that, in connection with the above agreement and in consideration therefor, Mrs. Lenz agreed in writing as follows:

" 'I agree to the above and waive the alimony and support provisions for said children in the decree in *Lenz v. Lenz* in consideration of Robert Lenz signing the above agreement.        Signed—Bertha Lenz.' "

The opinion further states that, by virtue of this agreement, Mr. and Mrs. Rape adopted the two minor children of Mr. and Mrs. Lenz; that subsequent to July, 1926, Mr. Lenz refused to pay the fifty dollars a month and an action was instituted and judgment for five hundred dollars obtained against him.   Subsequent to the entry of the judgment, Lenz filed a petition in bankruptcy and scheduled as liabilities the five-hundred-dollar judgment above mentioned and the contract set out relative to the support of the minor children.

We held that, under the circumstances in the cited case, the *debt created by the contract* was not one which could be discharged in the bankruptcy proceedings.

In concluding, the opinion states, p. 680:

"What the effect of the adoption of the minor children by Mr. and Mrs. Rape would have been upon the obligation of Mr. Lenz as provided in the divorce decree for their support and maintenance, *had it not been for the contract above mentioned,* it is not necessary here to determine, *and we express no opinion thereon."*   (Italics ours.)

It is thus apparent that, in the cited case, we specifically saved the question here presented.   In concluding our discussion of this question, we call attention to the case of *Mitchell v. Brown,* 18 Cal. App. 117, 122 Pac. 426, and *Gross v. Gross,* 110 Misc. 278, 179 N. Y. Supp. 900, which last cited case is particularly applicable from a factual standpoint.

We quote from the last cited case, p. 279:

"The whole statute shows that after an adoption the natural parent is no longer deemed to be the parent of the person adopted for any purpose, except that the adopted person may inherit from him.   Id. § 114; *Matter of MacRae,*

189 N. Y. 142, 147, 148. *Carpenter v. Buffalo General Electric Co.*, 213 id. 101.

"As the defendant has been relieved by the adoption from all of his parental duties and responsibilities, he cannot longer be required to support the children."

We shall next discuss the second question presented, to wit:

"Are any and all sums that became due under the interlocutory order and final decree for the support and maintenance of these minors, prior to October 26, 1934, barred by the statute of limitations?"

Rem. Rev. Stat., § 459 [P. C. § 8110-17], provides:

"After the expiration of six years from the date of the entry of any judgment heretofore or hereafter rendered in this state, *it shall cease to be a lien or charge against* the estate or person of the judgment debtor." (Italics ours.)

Section 460 [P. C. § 8110-17]: "No suit, action or other proceeding shall ever be had on any judgment rendered in this state by which the lien or duration of such judgment, claim or demand, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment, . . ."

Section 510 [P. C. § 7826-2]: "The party in whose favor a judgment of a court of record of this state has been, or may hereafter be, rendered, or his assignee, may have an execution issued for the collection or enforcement of the same, at any time within six years from the rendition thereof: . . ."

It is apparent that more than six years had expired between the twenty-sixth day of October, 1934, and the time when appellant, by means of a general execution and writ of garnishment, attempted to enforce payment of the sums claimed to be due and unpaid under the order and the decree.

We are of the opinion that, if each payment which respondent was required to make under such order and decree was, in fact, a judgment, it must be held, under the authority hereinafter cited, that appellant was barred from instituting any proceedings to enforce the collection of such payments that became due, and remained unpaid, prior to October 26, 1934. *Johnson v. Great Northern Lbr. Co.*, 85

Wash. 16, 147 Pac. 641; *Ball v. Bussell,* 119 Wash. 206, 205 Pac. 423; and *Roche v. McDonald,* 136 Wash. 322, 239 Pac. 1015, 44 A. L. R. 444, wherein, after referring to Rem. Comp. Stat., §§ 459 and 460, we stated, p. 326:

"This statute, we think, is not a mere statute of limitation affecting a remedy only. It is more than that. It not only makes a judgment cease to be a 'charge against the person or estate of the judgment debtor' after six years from the rendering of the judgment, but also in terms expressly takes away all right of renewal of or action upon the judgment looking to the continuation of its duration or that of the demand on which it rests, for a longer period than six years from the date of its rendition."

In *Hillman v. Gray,* 163 Wash. 406, 1 P. (2d) 318, 75 A. L. R. 1356, we again had occasion to construe Rem. Comp. Stat., §§ 459 and 460, and therein stated, p. 408:

"Construing those two sections of the statute it has been held that, after the expiration of six years, a judgment has ceased to have any vitality, and is of no force and effect. . . .

"It has also been held that a judgment more than six years old will not sustain a garnishment proceeding, because that is not an original or independent action, but is ancillary to the original cause from which its existence comes."

It should be stated that, while Rem. Comp. Stat., §§ 459 and 460, are not, in their wording, exactly the same as Rem. Rev. Stat., §§ 459 and 460, the difference would not affect the applicability of the above-cited cases to the question here before us.

Appellant has cited the case of *Feek v. Feek,* 187 Wash. 573, 60 P. (2d) 686. That case is not helpful here, because in the cited case we did not determine whether or not the six-year statute applied, stating, p. 579:

"Whether the six-year limitation applies, as appears to have been assumed or conceded in *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61, it is unnecessary to determine in this case, because the order of the court did not relate to any installment maturing prior to the six-year period."

■ Did each payment which respondent was ordered to make under the interlocutory order and final decree of

divorce for the support and maintenance of these minors become in fact a judgment?

Respondent was ordered to pay a certain amount on a definite date each month. Rem. Rev. Stat., § 404 [P. C. § 8078], provides: "A judgment is the final determination of the rights of the parties in the action."

In *Harris v. Harris,* 71 Wash. 307, 128 Pac. 673, the court had under consideration a divorce decree which contained the following language, p. 308:

" 'And the plaintiff be, and he hereby is, ordered and directed, until the further order of this court, to pay to the defendant, on the first day of each and every month, the sum of $16, for the support of the minor child Cecil.' "

In referring to this decree, we stated, p. 309:

*"The only final feature of judgments of this character is as to each installment of alimony as it becomes due.* As to these installments, the rights and liabilities of the parties become absolute and fixed at the time provided in the decree for their payment, and to this extent the judgment is a final one." (Italics ours.)

In *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017, we stated the question to be determined as follows, p. 263:

"The question is whether or not a decree entered in a divorce action, providing for the payment of alimony in monthly installments, appearing upon the records of the court to be wholly or partially unsatisfied, and including installments which have accrued less than six years prior to the suing out of the writ, *constitutes such a judgment as will support a writ of garnishment."* (Italics ours.)

In that case we referred to, and distinguished, certain cases holding that judgments for alimony in *gross* amounts are nothing more than judgments for the payment of money. Then citing *Harris v. Harris, supra; Beers v. Beers,* 74 Wash. 458, 133 Pac. 605; *Kinne v. Kinne,* 137 Wash. 284, 242 Pac. 388, and *State ex rel. Taylor v. Superior Court,* 151 Wash. 568, 276 Pac. 866, we stated, p. 268:

"While the precise question here urged was not presented in any of the cases cited, we are clearly of the opinion that, under those authorities, it must be held that a judgment for alimony payable in installments is, in so far as accrued

installments are concerned, such a judgment as affords a legal basis for the issuance of a writ of garnishment."

The opinion concludes with the following statement, p. 270:

"We conclude that such a decree as was entered in favor of this appellant constitutes, in so far *as accrued installments of alimony due thereunder* are concerned, a final judgment which may be enforced either by attachment of the person or by the ordinary means provided for collection of judgments." (Italics ours.)

In view of what is stated in the *Boudwin* opinion, it is apparent that, while each separate installment of alimony, as it became due, constituted a judgment, yet, to support a writ of garnishment, such installment must have accrued within the statutory period of six years prior to the suing out of the writ.

We are satisfied that both the interlocutory order and the final decree became final judgments, in so far as the installments then required to be made for the support and maintenance of these children are concerned, at the time such installments became due; and that, six years after they became due, they ceased to have any force or effect and would afford no basis for the issuance of a writ of garnishment or general execution, or any other proceedings to enforce their collection.

Appellant, in an additional memorandum of authorities, has called our attention to the case of *Fisch v. Marler,* 1 Wn. (2d) 698, 97 P. (2d) 147. This case is not in point here for several reasons. In the first place, no adoption proceedings had been instituted in the cited case. In the second place, the provision in the divorce decree, in so far as the opinion shows, made no reference to its being for the support of the minor children of the appellant, and it could not have done so as Mr. Fisch and Nannie Marler Fisch had no children as the result of their marriage. In the third place, no question was raised in regard to the payments of alimony having been barred by the statute of limitations, but appellant contended that his earnings at that time were the community property of himself and his then wife and, there-

fore, not subject to garnishment for the satisfaction of the divorce decree obtained by his former wife, which decree, he contended, was a separate judgment against him.

May we say here that, while some courts do not consider a payment required to be made by a divorce decree for the separate maintenance of the minor children as alimony, this court apparently has not distinguished between a payment ordered to be made in a divorce decree to the wife and a payment ordered to be made for the support and maintenance of the minor child or children, but has referred to both payments as alimony.

We desire to call attention to the fact that, in this case, no showing was made that the minors here involved were living in poverty or actual need, and we, therefore, express no opinion as to whether or not an independent action might be maintained on behalf of a legally adopted child after such adoption against the natural parents, for the support and maintenance of such child, upon a satisfactory showing that such child was living in poverty and actual need caused by either the inability of the adoptive parents to support and maintain such child or the death of the adoptive parents leaving the child in a destitute condition.

In the instant case, we limit our conclusions, in so far as the adoption proceedings are concerned, to payments specifically ordered to be made for the support and maintenance of the minor children of respondent.

We are of the opinion that, under Rem. Rev. Stat., § 493 [P. C. § 7474], the matter of allowing costs was a discretionary one and that the court did not abuse such discretion in allowing them to respondent.

For the reasons herein assigned, the judgment of the trial court is affirmed.

BEALS, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.