Michael M. AGEN, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
REVENUE, CHILD SUPPORT EN-
FORCEMENT DIVISION, Appellee.

No. S–6913.

Supreme Court of Alaska.

Aug. 29, 1997.

Michael M. Agen, pro se, Anchorage.

Rhonda F. Butterfield, Assistant Attorney General, Anchorage and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. INTRODUCTION

The State of Alaska (State), Department of Revenue, Child Support Enforcement Division (CSED), determined that Michael Agen was responsible for the repayment of public assistance already expended for the support of his child and for the payment of ongoing support for the child. The superior court affirmed and awarded attorney's fees to CSED. We reverse the attorney's fees award and affirm in all other respects.

## II. FACTS AND PROCEEDINGS

Michael Agen is the natural father of Andrea Dawn Hanzuk, born on September 19, 1980 to Debra Hanzuk. In March 1981, Agen signed a Consent to Adoption, stating that he released his rights as a parent and consented to entry of a court order of adoption of Andrea, without further notice to him.[1] In November 1982, the child's name

---

1. In the Consent to Adoption Agen declared:

 I, Michael Maxim Agen ... do hereby relinquish and release forever, my rights as a parent in and to a female child born ... on September 19, 1980, namely: Andrea Dawn Hanzuk Agen, to Debra M. Hanzuk.... I declare that I am the father of said child and I do hereby consent to the adoption of said child and respectfully request any court of competent jurisdiction to enter its order of adoption without further notice to me.

 I do further consent that Debra M. Hanzuk shall have full care and custody of said child until an order is entered for it's [sic] adoption and that Debra M. Hanzuk, alone, shall have the power to exercise control over said minor child until such time as a legal adoption is consummated.

 I do further agree not to interfere with the custody or management of said minor child in any way from the date of this instrument and

was changed from Andrea Dawn Hanzuk Agen to Andrea Dawn Hanzuk, without notice to Agen. Agen has had no significant contact with Andrea and has provided no significant support for her.

In December 1992, CSED sent Agen a Notice and Finding of Financial Responsibility (NFFR). The NFFR stated that Agen should pay ongoing child support of $845 per month, beginning February 1, 1993, pursuant to AS 25.27.160. It further stated that he owed the State $41,926 for assistance paid for the child from October 1, 1987 to January 31, 1993, pursuant to AS 25.27.160.

Agen requested an informal conference before CSED, stating that CSED's support determination was unreasonable and incorrect. After holding an informal conference, CSED confirmed its support determination, modifying only the amount of accrued debt, which by then had grown to $46,996. Agen appealed the informal conference decision.

A formal hearing was held before a hearing examiner from the Department of Revenue. Agen argued that in signing the Consent to Adoption, he relinquished his parental rights; therefore, the State was barred from recovering any child support from him. The hearing examiner concluded: (1) laches did not bar CSED's attempt to recover child support; (2) in the absence of adoption (of which no evidence was presented at the hearing), the Consent to Adoption did not terminate Agen's responsibility to support his child; and (3) Agen was responsible for the repayment of public assistance for the periods of October 1987 through April 1988 and December 1991 through April 1992, and was responsible for ongoing support dating from December 30, 1992 (the date of service of the NFFR). The hearing examiner did not determine the precise sum owed, ordering that Agen's

monthly payment and total debt be calculated "based on his ability to pay, to be determined from the income information submitted by [Agen] for the applicable years."

Pursuant to Appellate Rule 602(a)(2), Agen appealed to the superior court.[2] The superior court affirmed the hearing examiner's formal hearing decision and awarded attorney's fees to CSED.

Agen appeals. He argues that the superior court erred in concluding that (1) the Consent to Adoption did not extinguish his obligation to support his child; (2) laches and the statute of limitation did not bar CSED's action; and (3) he was not denied due process of law. Agen also argues that the superior court's award of attorney's fees was improper.

## III. DISCUSSION

### A. Standard of Review

■ We give no deference to the decision of the superior court when it acts as an intermediate court of appeals; we independently review the merits of the administrative determination. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). We review the superior court's award of attorney's fees for an abuse of discretion. *Fairbanks N. Star Borough v. Lakeview Enterprises, Inc.*, 897 P.2d 47, 62 n. 34 (Alaska 1995); *Diedrich v. City of Ketchikan*, 805 P.2d 362, 365 n. 3 (Alaska 1991).

### B. The Consent to Adoption Did Not Relieve Agen of His Responsibility to Support His Child.

■ A parent is obligated both by statute and at common law to support his or her children. *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987); AS 25.20.030. "This duty exists even in the absence of a

not to encourage or permit anyone else to do so.

2. The failure to calculate the amount of the accrued debt and the monthly stipend for ongoing support meant that the hearing examiner's decision was not final for appeal purposes. *See City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979). The superior court therefore should have either dismissed the appeal or treated it as a petition for review under Appellate

Rule 611(a)(2). Similarly, the decision of the superior court is not final, since further proceedings before the administrative agency are necessary to determine the amounts which Agen should pay. *See Thibodeau*, 595 P.2d at 629. However, neither party has raised this point, and in the interests of judicial economy we have decided to treat this case as a petition for review and decide the questions presented.

court order of support." *Matthews,* 739 P.2d at 1299.

A parent's duty of support encompasses a duty to reimburse the State for any public assistance for the support of the child. *Id.* Alaska Statute 25.27.120(a) establishes a parent's liability to the State when it pays the parent's support obligation:

> An obligor is liable to the state in the amount of assistance granted under AS 47.07 and AS 47.25.310–47.25.420 to a child to whom the obligor owes a duty of support except that, if a support order has been entered, the liability of the obligor ... may not exceed the amount of support provided for in the support order. . . .

Alaska Statute 25.27.140(a) establishes the State's power to collect ongoing support from obligors who are liable to the State for assistance it has paid:

> If no support order has been entered, the agency may establish paternity and a duty of support utilizing the procedures prescribed in AS 25.27.160–25.27.220 and may enforce a duty of support utilizing the procedure prescribed in AS 25.27.230–25.27.270. Action under this subsection may be undertaken upon application of an obligee, or at the agency's own discretion if the obligor is liable to the state under AS 25.27.120(a) or (b).

■ Agen admits that he is the natural father of Andrea, but argues that these statutory provisions do not apply to him because his support obligation terminated when he signed the Consent to Adoption in 1981. We disagree. The Consent to Adoption by itself does not relieve Agen of his responsibility to support his child.

Sound policy dictates that signing a Consent to Adoption by itself will not relieve a parent of his or her support obligation. Were we to hold otherwise, irresponsible non-custodial parents readily would sign such consent forms, leaving custodial parents or the State with the burden of supporting the children. The parental duty to support a child is relieved only when another person adopts the child and, as a consequence of the adoption, assumes the obligations to support the child. AS 25.23.130. Termination of pa-

rental rights and obligations does not occur with the execution of a Consent to Adoption; consent may be withdrawn before the entry of an adoption. AS 25.23.060; AS 25.23.070. Other jurisdictions also hold that "[t]he execution of a consent to adoption alone is insufficient to terminate a noncustodial parent's court-ordered obligation to make child support payments." *Schnepp v. State ex rel., Dep't of Econ. Sec.,* 183 Ariz. 24, 899 P.2d 185, 189 (App.1995) (citing *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420, 424 (1986)); *see also St. Germain v. St. Germain,* 22 Wash.2d 744, 157 P.2d 981, 984 (1945) (holding that child support obligation ceases when order of adoption is entered). Agen presented no evidence before the hearing examiner or the superior court that another person had adopted Andrea. Agen's execution of the Consent to Adoption therefore is insufficient in and of itself to relieve him of his duty to support Andrea. That duty would only have terminated if Agen and Hanzuk had properly executed an agreement to waive child support under the law in force at the time.

■ Prior to the promulgation in 1987 of the child support guidelines rule, Alaska Civil Rule 90.3, parties were free to agree to waive child support as long as they did so in writing, the custodial parent did not retract the agreement, and the State had provided no assistance for the support of the child. *See* AS 25.27.065; *Malekos v. Yin,* 655 P.2d 728 (Alaska 1982). However, in *Cox v. Cox,* 776 P.2d 1045, 1049 (Alaska 1989), we held that the "freedom of contract attitude exemplified by *Malekos* ... ha[d] been superseded by Rule 90.3," and concluded that "[p]arents may not make a child support agreement which is not subject to the rule." *Id.* (footnote omitted). Moreover, "no parental agreement regarding child support is valid until it receives judicial scrutiny under Rule 90.3." *Nix v. Nix,* 855 P.2d 1332, 1334 (Alaska 1993).

■ Although Agen executed the Consent to Adoption in 1981, it fails to meet the requirements for an enforceable contract between parents for a waiver of child support which were in existence before Rule 90.3 became effective. It is undisputed that Han-

zuk received public assistance for the support of Andrea. Moreover, Hanzuk never signed the Consent to Adoption, nor does the Consent to Adoption by its terms release Agen from his support obligation. The document concerns only Agen's parental rights, specifically his right to participate in Andrea's upbringing and his right to notice of an intended adoption. It does not refer to the rights of the State, nor does it refer to Hanzuk's rights, except to give her full control over Andrea. Agen has produced no evidence of any separate agreement between himself and Hanzuk which was intended to terminate his parental duty of support. That duty therefore remains in force.

### C. The State's Claim Is Not Barred by Laches.

■ Agen maintains that the superior court erred in finding that laches did not bar the State's support finding against him. This argument lacks merit. In *State, CSED v. Valdez*, 941 P.2d 144 (Alaska 1997), we held that the defense of laches is not available in child support collection actions, since suits for monetary judgments for child support arrearages are legal rather than equitable in nature. *Id.* at 152. Agen therefore cannot raise the defense of laches in this case.

### D. The State Brought Its Action within the Applicable Limitation Period.

■ Agen also argues that the Consent to Adoption evidences a contract and that the State's claim is barred by the statute of limitation applicable to contracts cases. This argument fails as well.

The State correctly asserts that it was not a party to the Consent to Adoption, is not bound by any contract between Agen and Hanzuk, and therefore is not subject to the statute of limitation applicable to contract cases.

The applicable statute of limitation is the six-year limit found in AS 09.10.120.[3] The date of the accrual of the cause of action is October 1987, the earliest period for which the State seeks reimbursement for public assistance paid for Andrea's support. The action was initiated by the State in 1992, when Agen received service of the NFFR pursuant to AS 25.27.160, and therefore falls within the six-year statute of limitation.

### E. Agen Was Not Denied Due Process.

■ Agen also raises a number of due process claims under the United States[4] and Alaska[5] Constitutions.[6] All of these claims lack merit.

■ Agen first argues that he has been denied due process of law, in violation of the Fourteenth Amendment of the United States Constitution.[7] He claims he was not afforded "an opportunity to be heard at a meaningful time and meaningful manner," because the 1993 administrative hearing was held "12 years after the rendering of the release of parental rights." In support of his claim, he cites cases involving pre-hearing deprivations. *See Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Unlike the appellants in the above cases, Agen was afforded numerous opportunities to argue his case

---

3. AS 09.10.120 provides:
 An action brought in the name of or for the benefit of the state, any political subdivision, or public corporation may be commenced only within six years of the date of accrual of the cause of action.

4. "[N]or shall any state deprive any person of life, liberty, or property, without due process of law...." U.S.Const. amend. XIV, § 1.

5. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

6. "Issues of constitutional interpretation are questions of law which this court reviews *de novo*." *Revelle v. Marston*, 898 P.2d 917, 925 n. 13 (Alaska 1995), citing *Carvalho v. Carvalho*, 838 P.2d 259, 261 n. 4 (Alaska 1992).

7. Agen restricts his argument to denial of federal constitutional protections, stating that "[a]ny effort to argue the Alaska Constitution in this case would be futile, for the 'broader' protections afforded by that document are illusionary, and nothing more."

prior to any deprivation of property.[8] These opportunities included an informal conference, a formal conference before a hearing examiner, an appeal to the superior court, and now an appeal to this court. Since these proceedings provided Agen with an ample opportunity to be heard, his claim fails.

Second, Agen argues that he was denied due process of law because the State delayed too long in bringing a claim against him. This claim amounts to a repetition of his argument concerning laches and the statute of limitation, and fails for the reasons stated above. The State's delay in seeking reimbursement may demonstrate a lack of diligence, but the period involved falls within the applicable statute of limitation. In addition, the relevant statute permits the State to recover from the natural parent public assistance paid for the support of a child, even if the State failed to give notice to the obligor parent of his accruing liability.[9] Any concerns regarding notice to Agen are outweighed by the undisputed fact that Agen knew he was the natural father of Andrea, but never provided any support for Andrea.

 Third, Agen contends that the superior court's denial of his Motion to Compel Discovery deprived him of due process of law by preventing him from defending against the State's claim on the ground that Andrea had been adopted. Agen maintains that, in violation of federal due process guarantees, the superior court improperly denied his Motion to Compel Discovery of information relating to the possible adoption of his child, and improperly placed on him the burden of proving that Andrea was adopted. As a threshold matter, Agen was provided with an opportunity to respond to the State's claims at the administrative level and before the superior court. However, he did not raise the defense of adoption or file his Motion to Compel Discovery until August 1994, after he had appealed the Department's determination to the superior court and after the parties had filed briefs in that court. We hold that Agen's motion for discovery therefore was untimely. We conclude that the superior court did not abuse its discretion in denying Agen's discovery motion. *See Glover v. Western Air Lines,* 745 P.2d 1365, 1370 (Alaska 1987) ("As a general matter, the decision to limit discovery is within the broad discretion of the trial court...."); *Douglas v. Glacier State Tel. Co.,* 615 P.2d 580, 593 (Alaska 1980).

 The superior court also did not err in placing on Agen the burden with regard to the issue of adoption. To prove its case, the State need only show that Agen is Andrea's father and that the State paid for Andrea's support; it need not show that Andrea was not adopted. Agen's claim amounts to an affirmative defense, and the burden of proof of an affirmative defense is on the party raising the defense. *See Stormont v. Astoria Ltd.,* 889 P.2d 1059, 1063 (Alaska 1995); *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 294 (Alaska 1976) ("The party raising the affirmative defense generally bears the burden of proof as to that issue.") *cited in State Dep't of Public Safety, Div. of Motor Vehicles v. Fann,* 864 P.2d 533, 538 (Alaska 1993). Even assuming that there may be in the State's control records which pertain to an adoption, Agen has failed to meet his burden of proof. In addition to failing to offer any evidence of a possible adoption, he does not claim that an adoption actually occurred. He contends only that an adoption is "possible."

---

**8.** There is nothing in the record suggesting that Agen suffered any pre-hearing deprivation, or that the State has attached Agen's wages or property. Apparently the only payment Agen has made is a single one hundred dollar payment made on April 11, 1995.

**9.** AS 25.27.120(c) provides in part:

Within 30 days after the agency knows the identity and address of an obligor who resides in the state and who is liable to the state under this section, the agency shall send written notification by certified mail to the obligor parent of the obligor's accruing liability.

Subsection (e) provides that "[t]he agency's failure to comply with (c) of this section does not bar an action by the state to recover amounts owed by the obligor." AS 25.27.120(e).

We express no opinion whether CSED's failure to provide notice to the obligor parent of his or her accruing debt would implicate the right of due process. Agen's actual knowledge of the birth of a child for which he bore legal responsibility is adequate notice to him of his accruing debt for support of that child.

### F. The Award of Attorney's Fees Constituted an Abuse of Discretion.

Agen argues that the superior court erred in awarding $713.80 in attorney's fees under Civil Rule 82, rather than under Appellate Rule 508.[10] He further argues that even under the appellate rules, an award of attorney's fees is improper because the Department of Law attorneys who argued this case for the State are the equivalent of in-house counsel. *See Continental Ins. Co. v. United States Fidelity and Guar. Co.*, 552 P.2d 1122, 1128 (Alaska 1976) (holding that "attorney's fees" do not include the cost of in-house counsel).

The State concedes that its request for attorney's fees should have been made under Appellate Rule 508, rather than Civil Rule 82. However, the State argues that "since there are no specific guidelines in Appellate Rule 508, an analogy to, and use of, Civil Rule 82 is appropriate." In response to Agen's in-house counsel argument the State cites numerous cases in support of its contention that fee awards to state agencies are proper.

■■■ We reverse the award of attorney's fees. As a general matter, a superior court acting as an intermediate appellate court has broad discretion to award costs and attorney's fees pursuant to Appellate Rule 508. *See Messerli v. Department of Natural Resources*, 768 P.2d 1112, 1122 (Alaska 1989); *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 482 (Alaska 1984). Indeed, we have held that the superior court need not articulate its reasons for awarding attorney's fees. *See Rosen*, 689 P.2d at 480. Such broad discretion notwithstanding, in *Royal Krest Construction, Inc. v. Municipality of Anchorage*, 640 P.2d 133, 134 (Alaska 1981), we held that it is error for a superior court acting as an intermediate appellate court to award fees under Civil Rule 82, rather than under Appellate Rule 508.[11] *See also Died-*

rich, 805 P.2d at 371; *Kodiak West. Alaska Airlines, Inc. v. Bob Harris Flying Serv., Inc.*, 592 P.2d 1200, 1204–05 (Alaska 1979). In *Royal Krest*, we focused on the different directives in the fee award provisions: "[A]ttorney's fees need not be awarded as a matter of course under [Appellate Rule 29(d), now Appellate Rule 508(e)]. This differs from Civil Rule 82, which requires that some portion of attorney's fees be awarded to the prevailing party...." *Royal Krest*, 640 P.2d at 134. In this case, the superior court based its award on Civil Rule 82. Since the superior court based its award on an incorrect rule, the case must be remanded to the superior court for recalculation in accordance with the correct rule.[12]

■■■ Agen's argument that *Continental Insurance* bars even an Appellate Rule 508 fee award to the State lacks merit. We have repeatedly affirmed the award of attorney's fees to prevailing government entities. *See, e.g., Patch v. Patch*, 760 P.2d 526, 530–31 (Alaska 1988) (affirming award to CSED of attorney's fees). In *Greater Anchorage Area Borough v. Sisters of Charity of House of Providence*, 573 P.2d 862 (Alaska 1978), we explained our holding in *Continental Insurance*:

> In that case the prevailing party in the superior court, an insurance company, argued that its actual legal costs were greater than those incurred by retained counsel, as the cost of in-house attorney time spent on the case had not been included within the award of attorney's fees sought in the superior court.... We did not intend to express a prohibition against awarding attorney's fees when a party's active representation in litigation is by in-house counsel rather than retained counsel.

Nothing in *Continental* was intended to alter our long-standing practice of awarding attorney's fees to public entities who

---

**10.** The superior court concluded that fees computed under Civil Rule 82(b)(1) would be inappropriate, and therefore awarded fees pursuant to Civil Rule 82(b)(3).

**11.** The superior court in *Royal Krest* erred by awarding fees under former Appellate Rule 29(d), the relevant language of which was identi-

cal to current Appellate Rule 508(e), rather than under Civil Rule 82. *See Royal Krest*, 640 P.2d at 134 n. 2.

**12.** While the amount of the award does not appear manifestly unreasonable, calculation of the amount owed under the correct rule is properly the role of the superior court.

litigate chiefly, and often entirely, through in-house counsel.

573 P.2d at 862–63. Agen offers no reason for us now to overrule that decision.

G. *The Amount of the Award for Back Child Support Is Excessive.*

Finally, Agen contends that the superior court erred in determining that he owed the State $41,926 in back child support. This argument fails as well. The superior court made no such determination. The superior court affirmed the formal hearing decision, which directed CSED to calculate the amount owed based on Agen's ability to pay, but did not specify the precise amount which Agen owed. The superior court mentioned the $41,926 figure only in the "Facts" section of its opinion, noting "[CSED] sent Agen a Notice and Finding of Financial Responsibility (NFFR) asserting that Agen [owed] a debt for past public assistance in the amount of $41,926 and ongoing support of $845 per month." Moreover, the State acknowledges that the $41,926 figure is too high.

## IV. *CONCLUSION*

We REVERSE the superior court's award of attorney's fees and REMAND the case for recalculation of that award. In all other respects, the decision of the superior court is AFFIRMED.