[No. 29831. Department Two. August 26, 1946.]

MABEL B. MOSHER, *Respondent and Cross-appellant,* v.
HARRY A. MOSHER, *Appellant.*[1]

[1]Reported in 172 P. (2d) 259.

*Clapp and Rea,* for appellant.

*Cheney, Hutcheson & Gavin,* for respondent.

Robinson, J.—The parties to this case were married in 1921, while residents of the state of Washington. Their daughter, Maxine Mosher, was born on August 26, 1922, and their son, Harry, on September 28, 1925. In December, 1928, the family moved to Portland, Oregon.

On May 14, 1930, plaintiff was granted a divorce from the defendant in the circuit court of the state of Oregon, for the county of Multnomah. The decree, a photostatic copy of which is among the exhibits, awarded the custody and control of the children, then seven and four years old, respectively, to the plaintiff, providing, however, that the defendant should be entitled to have them with him at reasonable times; and further, that defendant should pay every month the sum of fifty dollars "toward the support and maintenance of said minor children,"

" . . . beginning with the 5th day of July A. D. 1930, until the said child Dorothy Maxine Mosher reaches the age of majority, and then said defendant shall pay to the Clerk of this Court each and every month towards the support and maintenance of the said Harry Neal Mosher, the sum of Twenty-five ($25.00) Dollars per month upon the 5th day of each month thereafter until the said Harry Neal Mosher reaches the age of majority."

This action was brought in Grant county in November, 1943, to recover an alleged unpaid balance of the payments ordered for the support of the children. The amended complaint, filed July 12, 1944, prayed for a judgment for $6,820, with interest on each monthly installment from the date of accrual until paid, an attorney's fee of one thousand dollars and costs to be taxed; also,

"That said Oregon decree be established as a decree of this court to be enforced by contempt proceedings, sequestration proceedings, and by receivership proceedings as such decrees may be enforced under the laws of the State of Washington and the jurisdiction of the court of equity."

The answer denied the material allegations of the complaint and set up six affirmative defenses.

The trial court, holding that the six-year statute of limitations was applicable, gave the plaintiff judgment for $1,725 with respect to the support money decreed as to the daughter, Maxine, or twenty-five dollars per month for a period of six years, less three months, to wit,—"from December, 1937, to and including August, 1943"—on the 26th day of which month Maxine became twenty-one years of age; also, judgment with respect to the support of the son,

Harry, for eighteen hundred dollars, or twenty-five dollars per month from December, 1937, to and including November, 1943, or in all $3,525, together with interest as prayed for; and further decreed that the defendant was obligated to pay twenty-five dollars for the support of the son by the 5th of each and every month, beginning with December 5, 1943, and continuing until and including September, 1946, during which month the son will become twenty-one years of age.

The decree further ordered that the defendant should be required to pay all sums hereinbefore mentioned, both those which had been accrued and those to become due in the future, and provided that:

"This judgment and decree may be enforced by contempt proceedings, execution or otherwise and that the plaintiff shall have all of the remedies for the enforcement hereof as provided by the laws and statutes of the State of Washington, the same as though the said judgment for said child support money had been originally entered in the Superior Court of the State of Washington."

Both plaintiff and defendant have appealed. The appellant has submitted for our consideration thirteen assignments of error; the cross-appellant, five. An attempt to discuss all of the assignments within the permissible limits of one opinion could only result in an inadequate consideration of those upon which the parties principally rely. We think that appellant's counsel, after having fully considered the cross-appellant's brief, have clearly indicated the contentions upon which they principally rely in the closing paragraph of their reply brief, which reads as follows:

"The appellant respectfully submits that this action should be dismissed because the Superior Court of the State of Washington for Grant County does not have sufficient jurisdiction to maintain the same but that should this court be of the opinion that the Superior Court of Grant County has some jurisdiction that the judgment of that court be reversed and that the trial court be instructed to change the judgment to a judgment for money only as in an action at law and the amount due, if any, be determined by holding that Dorothy Maxine Mosher reached the age of majority when she became 18 years of age and by considering the

agreement between the parties for reduced payments and by considering the period of time during which no installment judgments accrued by reason of the emancipation of the children."

From this we gather that appellant's contentions are: (1) that the superior court of Grant county was without jurisdiction; (2) that, if it did have jurisdiction, it was only to render a money judgment, as in a suit at law; (3) that the court should not have allowed any recovery of support money for the daughter, Maxine, after she had reached the age of eighteen; (4) that the court should have found that the payments ordered in the divorce decree were reduced by a contractual agreement between the parties to the action; (5) that an excessive amount was allowed as to each of the children, because in each case a portion thereof accrued after emancipation.

■ We will discuss the appellant's contentions in the order above stated. He asserts, and the evidence conclusively shows, that, for a number of years, the plaintiff and her children were domiciled in Thurston county. He contends that Rem. Rev. Stat., § 995-2 [P.P.C. § 23-33], fixes the jurisdiction in that county only, and relies upon our recent opinion in *State ex rel. Jiminez v. Superior Court*, 24 Wn. (2d) 194, 163 P. (2d) 610, as supporting authority. But the language used in that opinion must be interpreted in the light of the fact that the court was then dealing (1) with an action to modify a decree, and (2) with a decree that was entered in the superior court of the state of Washington, for the county of Spokane. The case at bar is not one to modify a decree, but to enforce a decree, and it is not a decree of any Washington court, but a decree of a court of the state of Oregon; in other words, a foreign decree, to which nothing in § 995-2 or in the chapter of Rem. Rev. Stat. in which it is codified, applies. We, therefore, reject appellant's first contention.

■ As to contention (2), we think that the case of *Shibley v. Shibley*, 181 Wash. 166, 42 P. (2d) 446, 97 A. L. R. 1191, is so complete an answer that we would not be justified in enlarging upon what is said therein.

Appellant's contention (3) presents a more difficult question. The Oregon decree provided that the defendant should pay the sum therein specified for the support of Maxine Mosher "until the said child Dorothy Maxine Mosher reaches the age of majority." At the time the decree was entered, a female person, under the then existing statute of Oregon, reached majority at the age of eighteen; but, when Maxine was in her thirteenth year, the Oregon legislature passed an act providing that all persons should arrive at majority at the age of twenty-one years. The appellant contends that, since the age of majority was eighteen at the time the decree was entered, its language, "until the said child Dorothy Maxine Mosher reaches the age of majority," is as definite and certain as it would have been had the decree said, until the said child Dorothy Maxine Mosher reaches the age of eighteen. This court so held, when faced with parallel facts, in *Springstun v. Springstun,* 131 Wash. 109, 229 Pac. 14, 40 A. L. R. 595.

However, in *State ex rel. Weingart v. Kiessenbeck,* 167 Ore. 25, 114 P. (2d) 147, the supreme court of Oregon, on parallel facts, reached a decision which is directly contrary to our decision in the *Springstun* case. In the *Kiessenbeck* opinion, it is said:

"We rest our decision squarely upon the proposition that the original decree, properly construed, would require defendant to provide support until such time as the child should reach her majority. In view of the amended statute she never reached her majority until she became 21."

In the instant case, the trial judge was in conformity with rules of comity enforcing an Oregon judgment and decree, and it was necessary, of course, to determine the extent of the right sought to be enforced. This was a substantive question, and, therefore, one to be determined in accordance with the law of the place where the decree was entered. The trial judge was bound to apply the Oregon statute and, further, to interpret the language of the decree as the Oregon courts have interpreted the same language in other Oregon decrees, if such an interpretation could be found. He found the exact answer to the question which

confronted him in the *Kiessenbeck* case, and, accordingly, held (although stating that, if he was enforcing a Washington decree, he would have held otherwise) that Maxine Mosher was entitled to support money under the decree until she reached the age of twenty-one, that is, until August 26, 1943. This holding was correct.

The appellant pleaded, as an affirmative defense, that the plaintiff and defendant had made an agreement between themselves whereby plaintiff agreed to accept, and for a long period did accept, ten dollars per month in payment of the amounts to become due under the Oregon decree, and contends that the trial court erred in not giving effect to the alleged agreement in computing the sum to be awarded in its decree in this case. We think this contention must be rejected, for at least three sound reasons.

■ In the first place, if such an agreement was in fact entered into, it was void for want of consideration, on the theory that an obligation to pay a sum certain cannot be discharged by the payment of a lesser sum. We will not elaborate on that point, in view of the fact that there are simpler and less technical reasons.

■ The court found that no such contract was actually made, and that finding, in our opinion, is sustained by a decided preponderance of the evidence. There is evidence that plaintiff, during the hard years of the early thirties, agreed that, if defendant would steadily pay ten dollars per month, she would instruct her attorneys, who had been pestering him from time to time, to let him alone; but no evidence, other than his own, and that none too clear, that she agreed that these payments would be regarded as discharging the monthly obligations. We now quote from the comprehensive and carefully considered opinion of the trial judge:

"At that time we were in a depression and it is common knowledge that people would take almost anything that they could get. The plaintiff denied that she ever agreed to reduce the amounts her husband owed or to release him from his obligation under the decree to pay $50.00 a month. There is nothing in Exhibit 4 (defendant's letter of September 30, 1933) to indicate any intention to compromise. The defendant testified that in response to Exhibit 6 he

went to Olympia and paid her $50.00 and promised to pay $10.00 a month, and that he had an agreement with her at that time. However, we find that in 1937, in response to a letter from an attorney, he went to Olympia and agreed to pay $20.00 a month. This would seem to refute his contention that a binding agreement had been entered into in 1933. He admitted getting letters from her from time to time requesting more money. In addition to this, we have the fact that in 1937, in Mr. Lynch's office in Olympia, the defendant came with an attorney from Enumclaw and there was presented to the plaintiff a document to sign stating that she would never bring suit against him. She refused to sign it. All of these things indicate a refusal on her part to enter into a solemn agreement to modify the decree. The defendant has failed to sustain the burden of proving such an agreement."

The record bears out that conclusion.

■ Finally, on this point, even if the plaintiff and defendant did make the agreement alleged, the trial court would have been compelled to hold it illegal and void. They could not modify the court's decree or stipulate away the rights which the Oregon court had granted for the benefit of the children. It was said, in *State ex rel. Lucas v. Superior Court,* 193 Wash. 74, 74 P. (2d) 888:

"The relator was under the common law obligation to support his child during its minority, and this obligation continued without regard to the divorce decree. The parties to that decree could not stipulate away the right of the child to such support. [Citing cases.]"

The children were the direct parties in interest. The plaintiff, their mother, merely received the money as their trustee, and could not legally surrender the rights of her children, or in any way cancel, in whole or in part, the obligation which the Oregon court imposed upon their father in the divorce action. That could only be done by the court itself. 27 C. J. S. 1207, § 319g; 27 C. J. S. 1250, § 323a; *Gainsburg v. Garbarsky,* 157 Wash. 537, 289 Pac. 1000; *Pilson v. Salvoni,* 79 F. (2d) 411; *Walter v. Walter,* 189 Ill. App. 345; *Gloth v. Gloth,* 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700; *Innes v. McColgan,* 47 Cal. App. (2d) 781, 118 P. (2d) 855; *Glaze v. Strength,* 186 Ga. 613, 198 S. E. 721.

The fifth and final of appellant's principal contentions is that the awards with respect to the support of both son and daughter are excessive, in view of the fact that, in each case, the beneficiary was emancipated before reaching the age of majority. The plaintiff in the case frankly testified that Maxine had worked since June, 1941, and had been permitted by her to retain her wages. The judgment, however, requires the appellant to make monthly payments for her support up to and including August, 1943. Mrs. Mosher also testified that Harry worked in a butcher shop every night after school during 1941, and until he entered the navy in September, 1942.

"Mr. Clapp: Q. Did you get him the job, or did he get it himself? A. He got it himself. This man that had the butcher shop asked him to work. Q. And you gave your consent to his taking the job, and he kept the money? A. I let him do it because it kept him off the streets. I was working."

At the time this case was on trial (May, 1945), Harry Mosher was still in the navy, had advanced to boatswain's mate, and was receiving sixty-eight dollars per month, plus six per cent while at sea. The decree awards twenty-five dollars per month for his support from December, 1937, to November, 1943, and orders that appellant continue paying that amount until and including September, 1946.

These awards, particularly that in the case of the son, seem to put an unmerited hardship on the appellant father, but it would not have been within the province of the trial court to have modified the original decree in this action, even had the defendant prayed for a modification. It appears that the appellant knew the facts above set out. In fact, he assisted in getting employment for Maxine. He should have taken legal steps for modification on the ground of changed conditions. He has not done so, but has allowed the decreed payments to become judgments, month by month. Here, again, it must be remembered that the trial court was merely enforcing an Oregon divorce decree. The Oregon law provides:

"§ 9-915. Setting Aside or Modification of Decree. At any time after a decree is given, the court or judge thereof,

upon the motion of either party, shall have the power to set aside, alter or modify so much of the decree as may provide for the appointment of trustees for the care and custody of minor children, or the nurture and/or education thereof, or the maintenance of either party to the suit; provided, however, that such decree shall be a final judgment as to any instalment or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same; and provided further, that the court shall not have the power to set aside, alter or modify such decree or any portion thereof which may provide for the payments of money, either for the nurture or education of minor children or the maintenance of either party to the suit, which have accrued prior to the filing of such motion."

The foregoing section is quoted from 2 Oregon Compiled Laws Annotated (1940 ed.) 140, § 9-915, and appears to be still in effect in Oregon. The trial judge was, therefore, compelled to award recovery up to the time the action was brought, and, in our opinion, reached a correct conclusion in his memorandum opinion when he said:

"Either party had the right to go before the court and, upon proper showing, obtain a modification of the decree, either up or down. It seems to me that this should have been done by the defendant if he expected any relief because of the girl working or because the boy has been, and is now, receiving compensation while in the navy. It is true that I am hearing this matter as a court of equity. But, as I indicated before, I do not believe that I have any power to modify the Oregon decree or to adjust any equities between the parties. My only power is to interpret the Oregon decree, determine the amount of money due, and see that it is enforced here as a foreign judgment."

Although the attorneys for the cross-appellant have submitted five assignments of error, they have reduced their contentions to two. After describing the general nature of the case, they state that their cross-appeal raises the following questions:

"1. In such case where partial payments were made from time to time, do the same extend the period of the statute of limitations so that plaintiff can recover judgment for the full amount of the unpaid balance owing under the Oregon

decree, including the portion thereof which accrued more than six years prior to the commencement of the present action?

"2. In such case may plaintiff recover reasonable attorneys' fees pursuant to our 1943 statute?"

To both of these questions the trial court answered no. Cross-appellant contends that both should have been answered yes.

The amended complaint upon which this action went to trial alleged that, from the entry of the decree until the beginning of the action, the sum of $8,450 accrued, together with six per cent interest on each new monthly installment, and that $1,630 had been paid at various times, "which payments, when received, were applied by plaintiff to the installments first accruing and the interest thereon." Hence, the plaintiff's demand and prayer was for a judgment for $8,450, less $1,630, or $6,820, with interest from the respective due dates of the monthly allowance. Even though we disregard interest, the $1,631, so applied, would not pay the monthly awards beyond January, 1933; so the attempt of the plaintiff was to secure accrued payments, with interest as far back as that year and month, in this action brought ten years later.

The trial court held that the six-year statute of limitations applied, and no error is assigned as to that. It is, however, contended that the statute was tolled. It was pleaded by plaintiff, and the record appears to show, that, of the $1,630 actually paid, about $440 was *physically* paid during the six-year period prior to the beginning of the action. No payments were made in 1938. There were some twenty-dollar payments during 1939, 1940, and 1941. These are the payments which, it is contended by cross-appellant, tolled the statute of limitations under Rem. Rev. Stat., § 177 [P.P.C. § 73-47], which reads as follows:

"When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

■ Cross-appellant contends that we are here concerned with an "existing contract" to pay, with respect to one of two children, fifty dollars per month until Maxine became twenty-one, and twenty-five dollars per month thereafter for the support of Harry until he became twenty-one. We do not agree with that conception of the matter. We are concerned with a decree providing for a series of final judgments, to become so monthly until the children reach majority. That is the accepted view in Oregon. We quote from the *Kiessenbeck* case, *supra*:

"It is firmly established, both by statute and decision, that a decree for future payments of support money for the benefit of a child of the parties becomes a final judgment as to each instalment only upon the accrual date thereof."

And what is even more to the point, since we are dealing with a question of remedial, rather than substantive, law, that is the Washington rule also. We quote from the recent opinion in *St. Germain v. St. Germain*, 22 Wn. (2d) 744, 758, 157 P. (2d) 981:

"We are satisfied that both the interlocutory order and the final decree became final judgments, in so far as the installments then required to be made for the support and maintenance of these children are concerned, at the time such installments became due; and that, six years after they became due, they ceased to have any force or effect and would afford no basis for the issuance of a writ of garnishment or general execution, or any other proceedings to enforce their collection."

■ The cross-appellant not only pleaded that "which payments, when received, were applied by plaintiff to the installments first accruing and the interest thereon," but also testified that they were so applied. Although the sums mentioned were physically handed over in 1939, 1940, and 1941, they were applied on the judgments that accrued between May 10, 1930, and February, 1933. Hence, it follows that no partial payment was made on any judgment which became final after January, 1933, at the latest. We agree with the trial court's holding that

". . . she cannot run both hot and cold on this proposition. She is only entitled to such payments as have accrued

and become due during the six year period just prior to the commencement of the action."

█ The appellant's second question is based upon chapter 170, Laws of 1943, p. 548. This has but one section which reads as follows:

"When it shall appear to the court, upon the hearing of any proceeding instituted for the enforcement or modification of the orders of the court as set forth in any interlocutory or final decree of divorce, that such proceeding was necessary to procure the enforcement or modification of the orders of the court as set forth in said decree, *the court may, within its discretion, award attorney fees* and court costs." Rem. Supp. 1943, § 997-1 [P.P.C. § 23-20]. (Italics ours.)

Since the statute covers "any" proceedings instituted for the enforcement or modification of the orders of the court, as set forth in "any" interlocutory or final decree of divorce, it would, read literally, seem to authorize the trial court to award an attorney's fee as prayed for. However that may be, as will be seen by considering that portion of the quotation which we have italicized, the matter of attorneys' fees is not one of right, but wholly within the trial court's discretion. The statute says, "the court may, within its discretion, award attorney fees," and so forth. We are not disposed to hold that the trial court abused its discretion in refusing to award an attorney's fee to a litigant enforcing a foreign judgment.

The judgment and decree from which these appeals were taken is affirmed. Neither party will recover costs in this court.

Beals, C. J., Blake, and Jeffers, JJ., concur.