George MALEKOS,
Appellant/Cross-Appellee,

v.

CHLOE ANN YIN,
Appellee/Cross-Appellant.

Nos. 5767, 5817.

Supreme Court of Alaska.

Nov. 5, 1982.

As Amended on Rehearing Dec. 21, 1982.

Mark R. Moderow, Moderow, Walsh, Sharick & Tucker, Anchorage, and Bruce Sherman, Anchorage, for appellant/cross-appellee.

Donald W. Edwards, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee/cross-appellant.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The principal issue presented in this appeal is whether and to what extent court ordered child support may be waived by the child's custodian. The trial court concluded that despite a specific, intended waiver by the child's custodian of the child support obligation, the waiver was inoperative as a matter of law.

### I. FACTUAL AND PROCEDURAL BACKGROUND

George Malekos (George) and Chloe Ann Yin (Chloe) were married in 1963. They lived together for only a brief period. On February 2, 1964, their son Richard Todd Malekos was born. George obtained a decree of divorce from Chloe at Reno, Nevada, on December 15, 1964. The decree required George to pay Chloe the sum of $60.00 per month for the support of Richard.

George visited Chloe when she was still in the hospital with Richard. At that time, as well as on several other occasions, Chloe told George she wanted nothing to do with him and that she did not want support from him. In addition, Chloe had contact with members of George's family on numerous occasions, and at no time did she express any interest in obtaining child support from George. George visited his child on only a few occasions in the years preceding this litigation.

George did not make the payments as ordered by the Nevada decree. Eventually he moved to Alaska, and at the time of trial he had lived in Alaska approximately thirteen years.

Richard apparently spent most of his first ten years with Chloe's parents. There is no evidence that Chloe provided financial support for Richard during this period.

On September 15, 1977, Chloe filed in the Superior Court for Santa Clara County, California, a complaint for support under the Uniform Reciprocal Enforcement of Support Act. Chloe sought monthly support in the amount of $150.00 and arrearages in the amount of $8,620.00 under the Nevada decree. The action was transferred to a superior court in Alaska on October 1, 1977.

George was served with process in the state. The case came on for trial in October 1980, at which time George raised the defenses of waiver, laches, estoppel and statute of limitations.

The superior court determined that Chloe's statements and her course of conduct constituted a waiver of George's decretory obligation to make child support payments. The court ruled, however, that a custodial parent's waiver of support is inoperative as a matter of law. The court therefore held that George was obligated to pay all arrearages not barred by the appli-

cable statute of limitations.[1] The court did not award prejudgment interest on the amounts due.

Both parties appeal. George submits that the superior court improperly determined that a waiver of decretory child support is invalid as a matter of law. Chloe submits that the court improperly denied an award of prejudgment interest on any arrearages owed.

## II. WAIVER OF DECRETORY CHILD SUPPORT

The principal issue presented on appeal is whether to give effect to a custodial parent's waiver of decretory child support payments from the noncustodial parent. The custodial parent argues that to give effect to such a waiver is contrary to statutory and public policy concerns. The noncustodial parent, on the other hand, asserts that the waiver should permanently extinguish the support obligation. We conclude that a waiver freely executed by the custodial parent can be asserted by the noncustodial parent to bar recovery of child support arrearages, absent a finding that such a result would be deleterious to the child. However, the custodial parent may retract such a waiver at any time, and once withdrawn, the support obligation is renewed, subject to the court's continuing authority to modify the support obligation in the light of changed circumstances.

### A.

Whether a custodial parent who has waived decretory child support from a noncustodial parent may nonetheless recover support arrearages is a question of first impression in Alaska. Other courts that have addressed this issue have reached divergent views. *See generally* Annot., 5 A.L.R.4th 1015 (1981) ("Laches or Acquiescence as Defense, so as to Bar Recovery of Arrearages or Permanent Alimony or Child Support"); 100 A.L.R.3d 1129 (1980) ("Validity and Effect, as Between Former Spouses, of Agreement Releasing Parent from Payment of Child Support Provided for in an Earlier Divorce Decree"). The apparent majority rule is that a waiver precludes a custodial spouse from recovering support arrearages, providing that the result is not deleterious to the child. *E.g., Kaminski v. Kaminski,* 8 Cal.App.3d 563, 87 Cal.Rptr. 453 (1970); *Anthony v. Anthony,* 204 N.W.2d 829 (Iowa 1973); *Wardle v. Wardle,* 464 P.2d 854 (Wyo.1970). Courts adopting this view oftentimes focus on whether there was "consideration" for the waiver, or whether the noncustodial parent detrimentally relied upon the purported waiver. Other courts, however, refuse to give effect to a custodial parent's waiver, arguing that child support payments are received by the custodial parent for the benefit of the child, and that as a consequence, the custodial parent has no authority to waive the child's entitlement to future support from the noncustodial parent. *E.g., Napoleon v. Napoleon,* 59 Haw. 619, 585 P.2d 1270 (1978); *Ditmar v. Ditmar,* 48 Wash.2d 373, 293 P.2d 759 (1956).

We adopt the rule that a custodial parent may waive child support payments established by a prior decree, and that such a waiver precludes the recovery of arrearages absent a finding of detriment to the child.[2] Parents bear both a statutory and moral obligation to support their child until emancipation or majority. AS 25.20.030. *See Young v. Williams,* 583 P.2d 201, 204 (Alaska 1978). This obligation is not extinguished by divorce. Viewed in this light, child support obligations imposed by a divorce decree allocate the burden of the parents' joint responsibility to provide their child with adequate support. While parents may not by waiver or otherwise eviscerate their child's right to adequate parental sup-

---

1. The trial court held that pursuant to AS 09.-10.220, the six year statute of limitation on judgments applicable in Nevada bars recovery of arrearages which accrued prior to September 1971.

2. In light of the difficulties inherent in determining the equitable effect of an out-of-court waiver, we encourage parties reaching such agreements as to waiver to seek prior court approval.

port, we see no compelling policy considerations to refuse to enforce a custodial parent's waiver of child support from a noncustodial parent, providing that such agreements are executed without fraud or duress, and providing that enforcement is not deleterious to the child.

■ Chloe offers several countervailing arguments. She first argues that allowing a custodial parent's waiver of decretory child support to bar the recovery of arrearages contravenes AS 47.23.060 [3] or, absent a statutory prohibition, public policy. The premise underlying either argument is that child support payments established by decree are for the benefit of the child, and that the custodial parent, who receives such payments as a trustee for the child, has no authority to waive the child's right to future support from the noncustodial parent. The conclusory distinction drawn between whether the custodial parent or the child "possesses" the right to receive support from the noncustodial parent interjects an unduly formalistic characterization of familial relationships that finds no support in either statute or public policy. The statutory argument advanced by Chloe relies upon the following portion of AS 47.23.060(a): "An order of support establishes a relationship by which the custodian of the child is the administrator for the purposes of administering child support on behalf of the child." Read in proper context, we think it plain that the legislature did not intend by enacting AS 47.23.060 to impose on a custodial parent receiving child support the fiduciary responsibilities and attendant legal liabilities of a trustee whose expenditures of such payments would thus be subject to extensive judicial scrutiny. Nor is such a result counseled by sound public policy considerations. Our concern is to assure that children receive from their parents adequate care and maintenance. A child's right to adequate parental support cannot be impaired by the custodial parent's waiver of decretory support. However, how parents choose to discharge their parental responsibilities is a matter particularly ill-suited for judicial supervision. As we stated in *Young v. Williams,* "the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody." 583 P.2d at 203 (footnote omitted). Without a more explicit source of authority or a more compelling public policy basis, we decline to hold that a custodial parent has no authority to waive decretory child support payments.

Chloe also argues that enforcing a waiver to bar the recovery of arrearages is necessarily deleterious to the child. We disagree. A custodial parent's waiver of decretory child support shifts that portion of the financial onus borne by the noncustodial parent to the custodial parent or to another private source. Chloe suggests that the practical consequence of such a reallocation of the burden of support is to diminish the monies available for the benefit of the child. Whether or not we share this view of practical realities is irrelevant, however, because we reject the concomitant notion that the quality of a child's home environment is directly linked to the extent of the financial resources available to provide support. A more troublesome concern is that a custodial parent's waiver of support may be tied to the noncustodial parent's relinquishment of visitation privileges. As an abstract proposition, questions of support and visitation are best viewed as separate considerations. *See* AS 47.23.080(c).[4] We are

---

**3.** AS 47.23.060 provides in pertinent part:

(a) An order of support establishes a relationship by which the custodian of the child is the administrator for the purposes of administering child support on behalf of the child. The court shall carefully consider the need for support, the ability of both parents to meet such support obligations, the extent to which the parents supported the child before divorce, and the economic ability of the parents to pay after separation and divorce. The court shall also consider the effect on the support obligation of a change in custodian. The need of the child for support shall be considered regardless of the sex of the parent awarded custody of the child.

**4.** AS 47.23.080(c) provides: "The determination or enforcement of a duty of support is unaffected by any interference by the custodian

not blind, however, to the fact that parties embroiled in the difficult emotional turmoil of a divorce may view support and visitation as related concerns. Without placing our judicial imprimatur on agreements that link the two, we conclude that agreements between parents concerning the proper rearing and maintenance of their child are entitled to judicial respect and enforcement absent any evidence of detriment to the child. Families must be accorded sufficient latitude to arrange their own relationships in a manner that in their view best accommodates their divergent needs.

■ We also reject Chloe's argument that a waiver of decretory support payments is ineffective if executed without judicial scrutiny. Contemporaneous judicial scrutiny is not needed, in our view, for a court to assess whether a waiver precludes recovery of support arrearages. When waiver is asserted as a defense to a petition to recover arrearages, courts must determine that the waiver was not tainted by fraud or duress, and that the waiver was not deleterious to the child. The question, indeed, is not whether judicial scrutiny is a prerequisite to enforcement, but whether a court abdicates its responsibility to the parties and to the child by exercising such scrutiny at a later point in time.

■ The last issue with respect to the effect of a waiver is whether such a waiver is ineffective if not supported by consideration. When the waiver at issue concerns the obligation to pay future support payments, as in the present case, we share Professor Clark's observation that "the insistence upon observance of contract principles ... seems unnecessary and undesirable." H. Clark, The Law of Domestic Relations in the United States § 15.3, at 512 (1968). Indeed, support obligations are by statute susceptible to judicial modification, and, therefore, consideration can always be inferred by the noncustodial parent's failure

to pursue the opportunity to obtain judicial modification of the support obligation.

## B.

We hold that a waiver of decretory support may be asserted to bar the recovery of arrearages without any formalities such as consideration or contemporaneous judicial scrutiny. We further hold that the custodial parent may retract the waiver at any time by initiating proceedings to enforce the support obligation. Once the waiver is withdrawn, the support obligation set forth in the decree is renewed. Of course, the noncustodial parent may petition the court to modify the support obligation upon a showing of· changed circumstances. *See Headlough v. Headlough,* 639 P.2d 1010, 1013 (Alaska 1982); *Curley v. Curley,* 588 P.2d 289, 291 (Alaska 1979).

■ Our holding that the parties may freely rescind an informal agreement with respect to the child support obligation imposed by a decree is consonant with the court's continuing authority to modify the support obligation. AS 09.55.205 provides that a court may modify a divorce decree as it relates to the child support obligation "at any time ... during the minority of any child of the marriage." An agreement between the parties cannot limit or abridge the court's continuing authority to modify a divorce decree to safeguard the best interests of the child. *Deivert v. Oseira,* 628 P.2d 575, 579 (Alaska 1981).[5]

We conclude that George's claim, that a custodial parent's waiver of decretory support permanently precludes the renewal of the support obligation, has no merit. We note in this regard that the superior court should carefully consider the effect of the waiver on the various parties in assessing the extent of the noncustodial parent's support obligation once a prior waiver is withdrawn, subject of course to the proviso that the best interests of the child is the court's paramount concern.

---

of the child with rights of custody or visitation granted by a court."

5. Through acquiescence, this court in *Deivert* recognized the validity of the parties' agree-

ment to waive child support payments in exchange for the relinquishment of the noncustodial parent's visitation rights. *Deivert v. Oseira,* 628 P.2d 575, 577 (Alaska 1981).

## C.

■ The superior court's finding that Chloe waived child support for the period preceeding October 1977, the date when this action was filed in Alaska, is amply supported by the evidence. The only evidence that the waiver was deleterious to the child was hearsay statements that for several years Chloe's parents assisted in the raising of the child, allegedly because Chloe did not have sufficient funds to raise the child by herself. In the context of the present case, we conclude that such evidence is insufficient to establish that the waiver was deleterious to the child. Accordingly, we hold that the waiver bars recovery of all arrearages which accrued before October 1977.

■ The superior court ordered George to pay arrearages for the period between when the waiver was withdrawn and when the superior court order was entered, October 1977 through November 1980. In addition, the court ordered George to continue to pay support in the amount of $60.00 per month until the child reaches eighteen. While this award may well be proper, we believe that the superior court's determination of George's child support obligation after the waiver was withdrawn may have been prejudiced by the erroneous view that a custodian's waiver of decretory child support is inoperative as a matter of law. We therefore think it advisable to allow the superior court an opportunity to reconsider these aspects of its decision. We add that if the superior court affirms its decision that George pay child support during the period after the waiver was withdrawn, prejudgment interest should be awarded on such arrearages.[6]

REVERSED and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, J., dissenting, joined by MATTHEWS, J.

CONNOR, J., not participating on rehearing.

RABINOWITZ, Justice, dissenting, joined by MATTHEWS, Justice.

I disagree with the court's conclusion that a custodial parent has the authority to reduce or extinguish a non-custodial parent's obligation to pay court ordered child support. In precluding Yin from recovering child support arrearages due under a valid divorce decree, the majority gives legal effect to a purported "waiver" by Yin. I would hold that Yin had no authority to alter the terms of the judicial decree insofar as it established Malekos' duty to pay child support. Thus, I would find the "waiver" void and hold Malekos liable for all arrearages that are not barred by the applicable statute of limitations.

The majority's approach is based upon the assumption that child support payments are the property of the custodial parent, rather than an entitlement of the minor child. Applicable statutory language clearly indicates that the legislature intended the child to be regarded as the primary recipient of the funds. The custodial parent is merely considered a conduit for the payments. According to AS 47.23.060, "[a]n order of support establishes a relationship by which the custodian of the child is the administrator for purposes of administering child support on behalf of the child."[1]

---

6. *See Williams v. Budke*, 606 P.2d 515, 519 (Mont.1980) (interest on past due payments for support money is automatically collectible the same as any other money judgment).

1. AS 47.23.060 provides:
    *Order of support.* (a) An order of support establishes a relationship by which the custodian of the child is the administrator for the purposes of administering child support on behalf of the child. The court shall carefully consider the need for support, the ability of both parents to meet such support obliga-

tions, the extent to which the parents supported the child before divorce, and the economic ability of the parents to pay after separation and divorce. The court shall also consider the effect on the support obligation of a change in custodian. The need of the child for support shall be considered regardless of the sex of the parent awarded custody of the child.
    (b) Repealed by § 21 ch 126 SLA 1977.
    (c) In a court proceeding where the support of a minor child is at issue, the court may order either or both parents to pay the

Thus, the custodian simply receives the payments on behalf of the child.[2] AS 47.23.045 explicitly states that it is the child who is "owed a duty of support."[3] The child is the "obligee," AS 47.23.110(4), while the parent receiving the funds is the "custodian." *See* AS 47.23.080(c) and AS 47.23.060.[4] When the parties are viewed in their respective capacities within the statutory scheme, it is apparent that the custodian does not have the authority to waive any or all monies due to the child.[5]

The majority would permit the waiver to be disregarded if a specific finding was made that the result would be "deleterious" to the interests of the child. However, I find it difficult to imagine a situation in which the child's interests would not be adversely affected by a termination or reduction in support payments. As a theoretical proposition, the majority may be correct in observing that there is no direct correlation between the quality of a child's home environment and the financial resources available for support. However, as a practical matter, child support money is often a critical determinant of the extent to which a custodial parent is able to satisfy the child's material needs. Since the child's needs are given paramount consideration by the court as it fashions the initial decree, it is reasonable to assume that his or her material welfare will be deleteriously affected by a reduction in resources available to the custodial parent.[6] The parents are, of course, free to rebut that assumption by

amount necessary for support, maintenance, nurture and education of the child. Upon a showing of good cause the court may order the parents required to pay support to give reasonable security for payments. An order for prospective child support may be modified or revoked as the court considers necessary.

**2.** The fact that this court has not imposed the duties of a full-fledged trustee on the parent, *Young v. Williams,* 583 P.2d 201, 203 (Alaska 1978) does not imply that the parent is thereby deemed the owner of these funds. Our reluctance in *Young* to impose formal fiduciary responsibilities upon the custodial parent cannot be used to justify a diminution in his or her responsibility to receive and dispose of such monies exclusively for the sake of the child.

**3.** AS 47.23.045 provides:
*Determination of support obligation.* The agency may appear in an action seeking an award of support in behalf of a child owed a duty of support, and may also appear in an action seeking modification of a support order, decree or judgment already entered. Action under this section may be undertaken upon application of an obligee, or at the agency's own discretion if the obligor is liable to the state under AS 47.23.120(a) or (b).

**4.** AS 47.23.110 provides in relevant part:
*Definitions.* In this chapter ...
(3) "duty of support" includes a duty of child support imposed or imposable by law, by a court order, decree or judgment, or by a finding or decision rendered under this chapter whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance, or otherwise, and includes the duty to pay arrearages of support past due and unpaid;

(4) "obligee" means a person to whom a duty of support is owed;
(5) "obligor" means a person owing a duty of support;
AS 47.23.080(c) provides:
(c) The determination or enforcement of a duty of support is unaffected by any interference by the custodian of the child with rights of custody or visitation granted by a court. AS 47.23.060 is set out in full at note 1, *supra.*

**5.** Several jurisdictions have concluded that child support is a right of the child and that purported waivers by custodial parents are entirely ineffectual. *See Brady v. Brady,* 225 Kan. 485, 592 P.2d 865, 869 (1979):

Divorced parents cannot legally reduce child support or terminate the obligation by a contractual agreement or otherwise. It is a right of the child and can only be reduced or terminated by court order. [citation omitted.]

and *Mosher v. Mosher,* 25 Wash.2d 778, 172 P.2d 259, 263 (1946):

The children were the direct parties in terest. The plaintiff, their mother, merely received the money as their trustee, and could not legally surrender the rights of her children, or in any way cancel, in whole or in part, the obligation which the Oregon court imposed upon their father in the divorce action. That could only be done by the court itself. [citations omitted.]

I would agree with the *Mosher* court that the mother was figuratively, if not formally, acting as trustee in receiving her children's support payments.

**6.** AS 47.23.060. The text of AS 47.23.060 is set forth in note 1, *supra.*

seeking judicial modification of support obligations pursuant to AS 09.55.220.[7]

A requirement that parties seek judicial approval for reallocation of support obligations is warranted by the fact that the court assumed continuing jurisdiction over the child's welfare when it initially framed the decree. Although I agree with the majority's observation that courts are generally reluctant to intrude upon agreements between parents concerning the proper rearing of their children, this principle is less applicable following a divorce. Having fashioned the initial support arrangement, the court has continuing authority and jurisdiction to supervise its implementation. Any modification of responsibilities established by the decree should, therefore, be subject to court approval.[8] Thus, I would not give any effect to a purported waiver by a custodial parent of child support payments and would affirm the superior court in awarding Yin the arrearages due under the original decree.

---

**7.** The parent's relative ability to contribute to the child's support is also a factor to be considered by the court in framing a support decree. AS 47.23.060. Thus, a waiver by the custodial parent of support payments may simply reflect a change in the parents' financial circumstances, leaving the total resources available for satisfaction of the child's needs unaffected. The majority is correct that the waiver in no way diminishes the responsibility of the custodian to provide support for the child. However, I think it important that an impartial third party be given an opportunity to determine whether the rearrangement will, in fact, ensure satisfaction of the child's material needs.

That parental self-interest may dictate contractual agreements directly contrary to the best interests of the child is illustrated in several cases where the parents exchanged a reduction in child support obligations for a relinquishment of visitation privileges. *See Deivert v. Oseira,* 628 P.2d 575, 577 (Alaska 1981) (parties stipulated that father would be released from child support obligation under decree if he relinquished visitation privileges) and *Anthony v. Anthony,* 204 N.W.2d 829, 833 (Iowa 1973) ("In the absence of a contrary showing, we believe the best interest of the child is deleteriously affected by a parental bargain exchanging a waiver of decretary child support for a surrender of visitation rights."). The majority correctly indicates its disapproval of such arrangements, but in my view misses the principle which they illustrate: the fact that the child's welfare may well be disregarded in the process of parental warfare.

**8.** *See Morgan v. Morgan,* 275 Ala. 461, 156 So.2d 147, 150 (1963). Rejecting a contention that it should give effect to a parental agreement exchanging a reduction in child support for abandonment of visitation privileges, the court observed:

This argument overlooks well-settled legal principles to the effect that appellant's duty to support his minor children, and the amounts of such support, were imposed by a final decree of a court having full jurisdiction in the premises. The parents are without any warrant in law to later nullify such decree by mutual agreement between themselves so as to deprive the minor children of the support to which they are entitled under the decree of a court of competent jurisdiction. Such agreements are without consideration, and void as a matter of public policy.

In *Meredith v. Meredith,* 238 Ga. 595, 234 S.E.2d 510, 511–12 (1977), the Georgia court refused to respect an agreement concerning alimony for similar reasons:

This court has repeatedly held that the parties may not, by their private agreement foreclose the court from exercising its judgment as to the question of alimony to be awarded in a divorce decree. [citations omitted] ... It would be anomalous indeed if the parties, by private agreement after the decree, could modify the terms of a judgment which they had no power to dictate to the court in the first place.

The Hawaii Supreme Court held that private agreements modifying child support obligations were void as a matter of public policy. In *Napoleon v. Napoleon,* 59 Haw. 619, 585 P.2d 1270, 1273 (1978) the court reasoned that:

Under HRS § 580–47 the court is clearly empowered with continuing jurisdiction regarding the support of the parties' minor children. Moreover, the court acquired *inherent,* continuing jurisdiction over a minor once the issue of his welfare was placed before the court .... [Therefore] the agreement, lacking the court's approval, is clearly not a valid and binding agreement, even as between the parties. [citations omitted.]