**Philip Eugene TAYLOR, Appellant and Cross–Appellee,**

v.

**Sue Ann McGLOTHLIN, Appellee and Cross–Appellant.**

Nos. S–6583, S–6584.

Supreme Court of Alaska.

June 28, 1996.

6. The Alaskan fisher "contributes" in the form of foregone benefits from petroleum revenues.

Bryan T. Schulz, Keene & Currall, Ketchikan, for Appellant and Cross–Appellee.

Michael J. Zelensky, Ketchikan, for Appellee and Cross–Appellant.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and SHORTELL, Justice pro tem.*

OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

This appeal requires this court to consider two issues: (1) whether a child support agreement entered into in 1976 can be modified retroactively, and (2) whether the superior court, in modifying child support prospectively, erred by ordering an amount less than the Civil Rule 90.3 formula requires.

## II. FACTS AND PROCEEDINGS

Sue Ann McGlothlin and Philip Taylor are the parents of a daughter, Alissa, born September 3, 1976. At the time of Alissa's birth, McGlothlin was sixteen and Taylor twenty, and they were not married. On September 9, 1976, six days after Alissa's birth, the parties entered into an "Agreement" and a "Judgment by Confession Without Action." [1] In addition to establishing paternity, the documents provided that Taylor would pay all of Alissa's medical and dental expenses and pay child support in the amount of $100 per month until Alissa reached nineteen years of age. Neither the agreement nor the confession of judgment was filed with a state court, and a judgment was never entered in accordance with either document.

Approximately fifteen years later, on August 7, 1991, McGlothlin filed a complaint against Taylor seeking both retroactive and prospective modification of Taylor's child support obligation.[2] In the fifteen year interim, Taylor consistently paid $100 in child support in conformity with the parties' agreement. Also, during that time, McGlothlin married, had two additional children, and moved to California. Taylor also married and now has three children.

In her complaint for retroactive modification, McGlothlin claimed that the expense to raise Alissa far exceeded the $100 per month which Taylor had paid. Taylor then moved for partial summary judgment on the issue of retroactive modification. The superior court denied Taylor's motion and treated McGlothlin's request for retroactive modification as an action on a debt. To this effect, the superior court stated:

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

**1.** McGlothlin was represented by counsel, Taylor was not.

**2.** McGlothlin also claimed that Taylor had not provided for all of Alissa's medical and dental needs. This issue is not before us in this appeal.

The court does *not* read McGlothlin's complaint as claiming a right to recover the amount of support Taylor should have been paying less $100.00 per month.... Instead, this portion of the case involves an action by McGlothlin suing on her own behalf and not on behalf of Alissa. (Another claim, for a prospective increase in support, is a claim on behalf of Alissa.) It also may be subject to the statute of limitations defense asserted by Taylor.

The superior court also stated that "[a]t trial, McGlothlin may prove the actual amounts she reasonably expended in support of Alissa and Taylor may address any legal or equitable defenses, after which the court will equitably allocate the burden between the two parents."

Following trial, the superior court allocated to Taylor fifty percent of the expenses McGlothlin incurred in raising Alissa, less a credit for the $100 per month he had paid. It held, however, that AS 09.10.050(1), the six-year statute of limitations, applied and limited McGlothlin's recovery to the period from August 1985 through 1991. The superior court found that the total reimbursable amount for the six-year period was $14,-499.97. The court further provided that Taylor was to pay the reimbursement award in three equal annual installments.

Concerning McGlothlin's complaint for prospective modification, a straightforward application of Civil Rule 90.3(a) results in a determination that Taylor's support obligation exceeds $600 per month. However, the superior court found "that unusual circumstances exist and that a lower child support amount is mandated to avoid manifest injustice." Accordingly, the superior court set Taylor's prospective child support amount at $300 per month, retroactive to August 1991, the date McGlothlin instituted suit seeking retroactive and prospective modification of Taylor's support obligation. Finally, the superior court denied McGlothlin's motion for attorney's fees, holding that since, "Each party won and lost major aspects of

this child support litigation. Neither should be characterized as the prevailing party for purposes of Alaska R. Civ. P. 82."

Taylor does not contest the superior court's authority to prospectively modify the parties' child support agreement and increase his obligation. He does however contest the superior court's authority to retroactively modify his child support obligation. Alternatively, he argues that the equitable defense of laches should bar McGlothlin's claim for retroactive modification of his support obligation. McGlothlin cross-appeals, arguing that the superior court erred in deviating from the criteria of Civil Rule 90.3 in setting Taylor's prospective child support obligation, erred in providing for installment payments in its award of retroactive support, and erred in denying her request for attorney's fees.

### III. *DISCUSSION*

#### A. *The Superior Court Erred by Retroactively Modifying the Parties' Child Support Agreement.*[3]

■ In disregarding the parties' child support agreement and judgment of confession, and in holding that McGlothlin could maintain an action for "reimbursement of a debt," the superior court placed dispositive emphasis on the fact that the parties' agreements had never been subject to judicial oversight or approval. To this effect, the superior court stated:

> Both the rule and the commentary [to Rule 90.3] make clear that a prescribed child support amount may not be modified retroactively....
>
> Therefore, McGlothlin could receive no retroactive modification of a support order entered pursuant to A.R.Civ.P. 90.3. The court also believes that Rule 90.3 and its prohibition on retroactive modification of support amounts is the controlling rule of decision when support orders entered by courts prior to the effective date of Rule

---

**3.** Trial courts generally have broad discretion concerning child support modification. *See, e.g., Arndt v. Arndt,* 777 P.2d 668, 669 (Alaska 1989). At issue is the question of whether the superior court was authorized to retroactively modify sup-

port. This raises questions of law. We consider questions of law *de novo,* adopting the rule that is most persuasive in light of precedent, reason and policy. *Bromley v. Mitchell,* 902 P.2d 797, 800 (Alaska 1995).

90.3 are brought before the court for review today. However, what the parties bring before the court for review in this case is not a support *order*; it is a support *agreement*. Therefore, the question of retroactive modification is controlled not by Rule 90.3 but by other statutory and common law rules.

As a threshold matter, we note that the weight the superior court placed on the distinction between an order and an agreement is misplaced. In 1976, agreements concerning child support, such as the one between McGlothlin and Taylor, were legal. Their agreement established paternity, provided for support, and required Taylor to assume Alissa's health care costs. The prohibition against parents agreeing privately to a level of child support below that called for by the provisions of Civil Rule 90.3 is an integral component of Civil Rule 90.3, which was adopted in 1987. *See Cox v. Cox,* 776 P.2d 1045, 1047 (Alaska 1989). Before that time, such agreements were legal, though they were retractable prospectively at the option of the custodial parent. Thus, we conclude that the fact that the parties' agreement was never subject to judicial approval is irrelevant to the proper resolution of this issue.

▌ In reaching its decision, the superior court stated that it was guided in its deliberations by *Matthews v. Matthews,* 739 P.2d 1298 (Alaska 1987). *Matthews* was a pre-Civil Rule 90.3 case decided shortly after the effective date of Civil Rule 90.3. The superior court explained *Matthews* as follows:

> The parties were divorced in 1974, and while there was an intent by the trial court to impose on the father a child support obligation of $150.00 per child per month, such an order was never entered. From 1974 until the action was commenced in 1986, the father paid little child support. In 1986, the mother sought to amend the decree to include a support order and also claimed a right to reimbursement for past child care expenses. The supreme court held that the mother was entitled to claim reimbursement from the father for his share of reasonable child care expenses.

From this, the superior court reasoned that McGlothlin is similarly entitled to reimbursement from Taylor.

Though *Matthews* and the instant case share a common feature—the absence of an underlying support order—they differ in a more meaningful way. Here the parties had reached an agreement on Taylor's support obligation, whereas in *Matthews* there was no order of support nor any agreement between the parties regarding child support. *Matthews* might have controlling significance here only if Taylor and McGlothlin had not entered into an agreement regarding child support and Taylor subsequently failed to provide child support.

Essentially, in *Matthews* this court corrected the superior court's oversight in failing to provide for child support. In so doing, since there was no underlying agreement or order, the only basis for calculating past support was fashioned on a reimbursement model. In contrast, here the parties had reached an agreement regarding child support and had abided by it for fifteen years.

Of greater relevance than *Matthews* is this court's decision in *Malekos v. Yin,* 655 P.2d 728 (Alaska 1982). In *Malekos,* after the superior court ordered the non-custodial parent to pay monthly child support, the custodial parent indicated "that she did not want support from him." *Id.* at 729. Thirteen years later, in 1977, the custodial parent filed a complaint seeking both arrearages and prospective modification. We have interpreted *Malekos* to signify that, "[w]ith respect to the question of support, . . . agreements between divorced parents to waive the child support obligation of one of the parents were valid and enforceable, but retractable prospectively at the option of the custodial parent." *Perry v. Newkirk,* 871 P.2d 1150, 1155 (Alaska 1994). However, in *Cox,* 776 P.2d at 1048, we concluded "that the decision in *Malekos* has been superceded by Rule 90.3. Parents may not make a child support agreement which is not subject to the rule."

If under *Malekos* parents could agree to entirely waive the child support obligation of one parent, it follows that in the absence of a support order, they could agree to a specified amount of child support, as is the case here.

Furthermore, even though *Malekos* was superseded by *Cox*, it still has relevance here, since this agreement was made before the child support guidelines rule was promulgated.

Our decision in *Perry* is of further significance. Doug Perry and Kelli Newkirk, unwed, had a child, named Amanda, in 1980. *Perry*, 871 P.2d at 1151. After living together with their child, they separated in 1984 and thereafter

> signed a stipulation which purported to terminate Doug's parental rights concerning Amanda and to relieve Doug prospectively of his obligation to pay child support. The custody investigator recommended approval of this stipulation and [the superior court] approved it on January 30, 1986.
>
> Five years later, on June 3, 1991, Kelli filed a motion for child support for Amanda. Doug opposed the motion on the grounds that his parental rights and obligations were terminated in 1986.

*Id.*

On appeal, we affirmed the superior court's setting aside of the termination order under Civil Rule 60(b)(4), holding that it was void for want of subject matter jurisdiction. *Id.* at 1155. Having held the parties' 1986 termination agreement void, we stated, "Thus, the question of child support was properly reopened by Kelli's motion of June 3, 1991, either under a retraction theory, following *Malekos*, or based on the substantial change in circumstances reflected by the promulgation of the child support guidelines." *Id.*

In our response to Kelli's claim on cross-appeal that the trial court erred in not ordering child support retroactive to at least August 1, 1987, when Civil Rule 90.3 was promulgated, we stated:

> On the merits of whether [the superior court] erred in ruling that child support arrearages would not be awarded, arrearages prior to Kelli's motion of June 3, 1991,

would not have been appropriate. As noted above, the 1986 order was void as a termination of parental rights and obligations, but was neither void nor invalid as an order approving the parties' agreement that Doug would not have to pay child support. As so limited, the order was subject to modification, but only from the time of the motion. *Malekos; see also* Civil Rule 90.3.

*Id.* at 1156. If the superior court's order approving the parties' pre–1987 agreement that Doug Perry pay nothing in child support is immune from retroactive attack, then in the case at bar, McGlothlin and Taylor's agreement that Taylor pay $100 per month is similarly immune. Consequently, we hold that the superior court erred when it held that McGlothlin could maintain an action for "reimbursement" of child care expenses.[4]

**B.** *The Superior Court Did not Err in Setting Taylor's Prospective Child Support at an Amount Less than the Rule 90.3 Calculation Requires.*

Though the superior court erred in modifying the parties' support agreement retroactively, it possessed the authority to modify Taylor's obligation prospectively. *See Perry*, 871 P.2d at 1155. In so doing, the superior court, after noting that under Civil Rule 90.3 Taylor's support amount would exceed $600, set Taylor's prospective support obligation at $300 per month. In her cross appeal, McGlothlin argues that this determination was clearly erroneous.[5]

As we stated in *Malekos:*

> The superior court ordered George to pay arrearages for the period between when the waiver was withdrawn and when the superior court order was entered, October 1977 through November 1980. In addition, the court ordered George to continue to pay support in the amount of $60.00 per month until the child reaches eighteen. While this award may well be proper, we

---

**4.** This conclusion renders moot Taylor's alternative argument that laches bars McGlothlin's claim for reimbursement.

**5.** Child support determinations are within the broad discretion of the trial court and will only

be reversed when this court is left with a definite and firm conviction that a mistake has been made. *Zimin v. Zimin*, 837 P.2d 118, 124 n. 8 (Alaska 1992).

believe that the superior court's determination of George's child support obligation after the waiver was withdrawn may have been prejudiced by the erroneous view that a custodian's waiver of decretory child support is inoperative as a matter of law. We therefore think it advisable to allow the superior court an opportunity to reconsider these aspects of its decision.

*Malekos,* 655 P.2d at 733.

In *Malekos,* we reasoned that the superior court's award of a low level of prospective support was influenced by its erroneous decision to require the obligor parent to pay support arrearages. Since the trial court may have been compensating for the imposition of arrearages when setting its prospective support amount, we afforded the superior court an opportunity to reconsider its decision in light of the fact that arrearages were inappropriate. Similarly here, since the superior court's decision to deviate from Civil Rule 90.3 was perhaps motivated in part by its decision to award "reimbursement," it should be allowed the opportunity to reconsider its Civil Rule 90.3 decision, given that we have reversed the superior court's decision on the retroactivity issue.

Turning to the merits, the superior court's authority to deviate from the prescribed amount of support under Rule 90.3(a) is limited. Civil Rule 90.3(c)(1) provides in relevant part:

> The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied. The court must specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support.... Good cause may include a finding:
>
> (A) That unusual circumstances, such as especially large family size, ... exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children. The court shall consider the cus-

todial parent's income in this determination.

As to what constitutes "unusual circumstances," the commentary to Civil Rule 90.3 provides guidance and discusses specific factual situations. Relevant to this case is the commentary's discussion of "subsequent children," a factor which the superior court relied upon in varying Taylor's support obligation:

> *Subsequent Children.* A parent with a support obligation may have other children living with him or her who were born or adopted after the support obligation arose. The existence of such "subsequent" children, even if the obligor has a legal obligation to support these children, will not generally constitute good cause to vary the guidelines. However, the circumstances of a particular case involving subsequent children might constitute unusual circumstances justifying variation of support. The court should reduce child support if failure to do so would cause substantial hardship to the "subsequent" children.

Civil Rule 90.3 Commentary VI(B)(2).

The superior court was influenced by the factor highlighted above, substantial hardship to the subsequent children. In its decision, it stated:

> [Taylor] seeks relief from the Rule 90.3(a) amount based upon unusual circumstances that justify setting child support at a lower amount. The court agrees that unusual circumstances exist and that a lower child support amount is mandated to avoid manifest injustice. [Taylor's] main complaint is that [McGlothlin] brought this suit fifteen years after they entered into an agreement for the payment of $100.00 child support per month. [Taylor] argues persuasively that he has incurred substantial obligations since Alissa was born in reliance on the $100.00 child support agreement with [McGlothlin]. This claim is bolstered by the fact that their agreement was entered into *years before* Rule 90.3 and the supreme court decision in *Matthews.* Among the obligations he incurred were those to support three children born after Alissa. [Taylor] had a

reasonable expectation concerning what his support obligations to Alissa would be. It would also work substantial prejudice on his subsequent children were support for Alissa set at the Rule 90.3 amount. The court is also influenced by the mortgage obligation that was reasonably incurred by [Taylor] to house his subsequent children and the need to pay substantial monthly child care costs for one of the subsequent children because the job which he has held for many years requires him to be away from home for two weeks out of the month. Finally, the court notes that [McGlothlin's] family, while challenged by a very high California cost of living, is better able to finance the costs of Alissa's care.

(Footnote incorporated into text, citation omitted.)

Initially it should be noted that in choosing to deviate from the level of support called for by Civil Rule 90.3, the superior court satisfied the formalities required by the rule. That is, it (1) stated its reasons in writing, (2) stated what the award would have been but for the variation, and (3) though not stated expressly, apparently concluded that its award was based upon proof by "clear and convincing evidence." Civil Rule 90.3(c)(1). Similarly, in concluding that this was a case of "unusual circumstances," the superior court properly considered McGlothlin's income. Civil Rule 90.3(c)(1)(A).

As for the influence of Taylor's mortgage on the superior court's decision, the commentary states:

> Prior or subsequent debts of the obligor, even if substantial, normally will not justify a reduction in support. The obligation to provide child support is more important than the obligation to fulfill most other obligations. However an obligor parent may attempt to present evidence which shows the existence of exceptional circumstances in an individual case.

Civil Rule 90.3 Commentary, VI(B)(5). Though the superior court found that Taylor's mortgage was "reasonably incurred ... to house his subsequent children," it did not find that the mortgage rises to the level of an "exceptional circumstance."

Though the superior court's finding that Taylor's subsequent children would suffer substantial hardship if the Civil Rule 90.3(a) amount was awarded is not clearly erroneous, its underlying reasoning is questionable. It found that Taylor's subsequent children would suffer substantial hardship because Taylor "had a reasonable expectation concerning what his support obligations to Alissa would be." However, under *Malekos* we recognized that as a matter of law a private child support agreement can be modified prospectively. *Malekos,* 655 P.2d at 732. Thus, in structuring his finances, Taylor could reasonably assume that he would not be subject to a retroactive modification of the parties' agreement; however, he similarly should have recognized that at any time his support obligation could be modified prospectively.

Even so, the superior court correctly found that if Taylor's support obligation was set at the Civil Rule 90.3(a) amount, his subsequent children will suffer "substantial prejudice." In short, we hold that the superior court's finding that Taylor's subsequent children will suffer substantially unless deviation from the Civil Rule 90.3 level of support was authorized is not clearly erroneous and did not constitute an abuse of discretion.

Although we have concluded that the superior court's decision as to the appropriate level of prospective child support was not clearly erroneous, as noted previously, we remand this aspect of the case to the superior court. Given the fact that the superior court's decision to deviate from Civil Rule 90.3 could have been motivated in part by its decision to award reimbursement to McGlothlin, it should be afforded the opportunity to reconsider its Civil Rule 90.3 prospective level of child support decision if in its discretion it deems it advisable.

## IV. CONCLUSION

The superior court's ruling requiring Taylor to reimburse McGlothlin is REVERSED. The superior court's ruling setting Taylor's prospective child support obligation is AFFIRMED and this aspect of the appeal is REMANDED for such further proceedings

as the superior court in its discretion considers advisable.[6]

---

**6.** Given our disposition of the issues in this appeal, it is unnecessary to address McGlothlin's claims that the superior court erred in ordering that Taylor pay off the reimbursement award in installments, and that the superior court erred in denying her any award of attorney's fees.